Carey D. Schreiber
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
cschreiber@winston.com

*Counsel for WhiteHorse Capital Management, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------- x
: 
In re: : Involuntary Chapter 7
:
Honors Holdings, LLC, : Case No.: 24-44875 (ESS)
:
Debtor. :
:
---------------------------------------------------- X

**NOTICE OF MOTION OF WHITEHORSE CAPITAL MANAGEMENT, LLC**
**FOR ENTRY OF AN ORDER PURSUANT TO**
**11 U.S.C. §§ 105 AND 362(d) AUTHORIZING RELIEF FROM**
**THE AUTOMATIC STAY (I) TO TERMINATE THE TRANSITION**
**SERVICES AGREEMENT AND (II) PERMITTING CFH**
**AND ITS AFFILIATES TO ADMINISTER CERTAIN BANK ACCOUNTS**

**PLEASE TAKE NOTICE** that, on April 22, 2025, WhiteHorse Capital Management, LLC, in its capacity as agent (in such capacity, "WhiteHorse"), by and through its undersigned counsel, filed with the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") the *Motion of WhiteHorse Capital Management, LLC for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 362(d) Authorizing Relief from the Automatic Stay (I) To Terminate the Transition Services Agreement and (II) Permitting CFH and Its Affiliates to Administer Certain Bank Accounts* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that, a hearing to consider the relief sought in the Motion will be held on **May 9, 2025 at 11:00 a.m.** (prevailing Eastern Time) before the Honorable

Elizabeth S. Stong, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Eastern District of New York, Conrad B. Duberstein U.S. Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201-1800.

**PLEASE TAKE FURTHER NOTICE** that, parties wishing to participate in the Hearing by Zoom, whether in a "live" or "listen only" capacity, must make an electronic appearance through the "eCourtAppearances" tab on the Court's website (https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl) no later than 4:00 p.m. (prevailing Eastern Time) on the business day before the Hearing (the "Appearance Deadline"). **In the event that you are not able to register online**, you may call or email Judge Stong's courtroom deputy for instructions at (347) 394-1864, ess_hearings@nyeb.uscourts.gov, at least two (2) business days before the Hearing. Following the Appearance Deadline, the Court will circulate by email the Zoom link to the Hearing to those parties who have made an electronic appearance. Parties wishing to appear at the Hearing must submit an electronic appearance through the Court's website by the Appearance Deadline and not by emailing or otherwise contacting the Court. Additional information regarding the Court's Zoom and hearing procedures can be found on the Court's website.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Motion or the relief requested therein shall be made in writing and (a) filed with the Bankruptcy Court no later than **May 2, 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline") and (b) served upon the following parties by email: (i) counsel to WhiteHorse, Winston & Strawn, LLP, 200 Park Avenue, New York, NY 10166, Attn: Carey Schreiber (cschreiber@winston.com); (ii) counsel to Honors Holdings, LLC, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Brian S. Lennon, Esq. (blennon@willkie.com), Philip F. DiSanto, Esq. (pdisanto@willkie.com), and Yara Kass-Gergi, Esq. (ykass-gergi@willkie.com); (iii) counsel to

the Chapter 7 Trustee, LaMonica Herbst & Maniscalco, LLP, 3305 Jerusalem Ave., #201, Wantagh, NY 11793, Attn: Holly R. Holecek (hrh@lhmlawfirm.com) and Salvatore LaMonica (sl@lhmlawfirm.com); and (iv) special litigation counsel to the Chapter 7 Trustee, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10001, Attn: Avery Samet, Esq. (asamet@aminillc.com).

**PLEASE TAKE FURTHER NOTICE** that if no responses or objections are timely filed and served with respect to the Motion, WhiteHorse may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed as **Exhibit A** to the Motion, which may be entered with no further notice or opportunity to be heard.

**PLEASE TAKE FURTHER NOTICE** that if you would like to receive copies of the Motion set forth above, you may access such documents online from the Bankruptcy Court's electronic case filing system located at www.nysb.uscourts.gov. Note that a PACER password is needed to access documents on the Court's website.

Dated: April 22, 2025  
       New York, New York

WINSTON & STRAWN LLP

By: */s/ Carey D. Schreiber*  
Carey D. Schreiber  
200 Park Avenue  
New York, New York 10166-4193  
Telephone: (212) 294-6700  
Facsimile: (212) 294-4700

*Counsel for WhiteHorse Capital Management, LLC*

Carey D. Schreiber
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
cschreiber@winston.com

*Counsel for WhiteHorse Capital Management, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
: 
In re: : Chapter 7
: 
Honors Holdings, LLC, : Case No.: 24-44875 (ESS)
: 
Debtor. :
: 
------------------------------------------------------- x

**MOTION OF WHITEHORSE CAPITAL MANAGEMENT, LLC
FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 362(d)
AUTHORIZING RELIEF FROM THE AUTOMATIC STAY (I) TO TERMINATE
THE TRANSITION SERVICES AGREEMENT AND (II) PERMITTING CFH
AND ITS AFFILIATES TO ADMINISTER CERTAIN BANK ACCOUNTS**

WhiteHorse Capital Management, LLC, in its capacity as agent (in such capacity, "WhiteHorse") for the secured lenders of Honors Holdings, LLC (the "Debtor") in the above-captioned chapter 7 case (the "Chapter 7 Case") files this motion (the "Motion") pursuant to §§ 105(a) and 362(d) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order substantially in the form attached hereto as **Exhibit A**, modifying and terminating the automatic stay, to the extent necessary in an abundance of caution, permitting WhiteHorse, CFH,[1] CFO and their affiliates (i) to terminate the TSA and (ii) permitting CFH and its affiliates to fully

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning given in the TSA (as defined herein).

administer the bank accounts owned by CFH and its affiliates and accessible for administrative convenience through the Debtor's account portal at JPMorgan Chase ("JPM"), which entities shall have access to their bank accounts in such portal. In support of this Motion, WhiteHorse respectfully states as follows:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Eastern District of New York (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory bases for the relief requested by this Motion are sections 105 and 362(d) of the Bankruptcy Code and Bankruptcy Rule 4001 and Rule 4001-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Eastern District of New York (the "Local Rules").

4. The *Order for Relief* [Docket No. 22] (the "Order for Relief") was signed by the Court on February 27, 2025.

5. On March 4, 2025, the United States Trustee appointed Lori Lapin Jones as chapter 7 trustee (the "Trustee") [Docket No. 24].

## FACTUAL BACKGROUND

**A. The Foreclosure and the Transitions Services Agreement**

6. On September 25, 2024, the Debtor and WhiteHorse entered into that certain Partial Strict Foreclosure Agreement (the "PSFA") under Section 9-620 of the New York Uniform Commercial Code pursuant to which, among other things, the equity interests in 137 subsidiaries of the Debtor, including 109 subsidiaries that operate Orangetheory Fitness (the "Franchisor") studios, certain other assets of the Debtor, including its books and records, and assets of other of

2

the Debtor's subsidiaries that were not acquired (the "Excluded Entities"), including, but not limited to, the membership agreements and proceeds therefrom and the books and records of each of the Excluded Entities, if any, and the option to acquire the Debtor's membership interests in the Excluded Entities was accepted by WhiteHorse and assigned to Camarillo Fitness Holdings, LLC ("CFH") and Camarillo Fitness Opco, LLC ("CFO") as set forth in the PSFA in exchange for the partial satisfaction of $70 million of the more than $114 million in secured obligations owing to WhiteHorse by the Debtor, leaving WhiteHorse owed in excess of $44 million by the Debtor.

7. On September 25, 2024, the Debtor and WhiteHorse also entered into that certain Transition Services Agreement (the "TSA") pursuant to which the Debtor agreed to provide certain requested services to CFH and its affiliates and facilitate the transfer of personnel, and WhiteHorse, through CFH, agreed to, among other things, fund a budget to, among other things, permit the Debtor to operate the twenty-two (22) Franchisor studio subsidiaries that were not acquired by CFH, and to permit personnel employed by CFH or its affiliates to provide services to the Debtor and its subsidiaries on the terms set forth therein.

8. Pursuant to the TSA, WhiteHorse, through its assignee, CFH, was permitted to offer employment to any of the Debtor's or the Debtor's subsidiaries' employees who remained employed thereby as of the Closing Date of the TSA. Any such employee that accepted employment with CFH or one of its subsidiaries pursuant to the TSA (a "Transferred Employee") was permitted to continue to provide Transition Services on behalf of the Debtor or the Debtor's subsidiaries to CFH (the "Buyer Provided Services") until such services are no longer needed by CFH or its affiliates.

9. On November 8, 2024, WhiteHorse exercised its rights under the PSFA to foreclose on the equity interests of an additional twelve (12) Excluded Entities. As of the date hereof, the

Debtor remains the owner of a number of Excluded Entities that operate Franchisor studios, including all of the equity in (i) JM Aiken LLC ("Aiken") that operates Franchisor studio #1524 in Aiken, South Carolina (the "Aiken Studio") and (ii) JM Spartanburg Fitness LLC ("Spartanburg") that operates Franchisor studio #0884 in Spartanburg, South Carolina (the "Spartanburg Studio," and collectively with the Aiken Studio, the "Aiken and Spartanburg Studios"). Aiken and Spartanburg are member managed by the Debtor. Prior to the entry of the Order for Relief, the Debtor, WhiteHorse, Franchisor, and various landlords were negotiating the disposition of the remaining studios operated by the Debtor.

10. After the closing of the PSFA, an affiliate of CFH, Camarillo Fitness Management, LLC ("CFM"), offered employment to all of the Debtor's employees, including the employees of the Excluded Studios, including Aiken and Spartanburg (the "Aiken and Spartanburg Transferred Employees"). Pursuant to the TSA, the Aiken and Spartanburg Transferred Employees are provided by CFM at its expense to each of Aiken and Spartanburg as a Buyer Provided Service to operate each of their studios. In parallel, Aiken and Spartanburg continue to receive cash proceeds from their Transferred Assets, including membership agreements, which, pursuant to the PSFA, all right, title, and interest in was transferred to WhiteHorse as of the Closing Date of the PSFA. Such amounts remain in Aiken and Spartanburg bank accounts at JPM.

11. The Debtor and its affiliates operated a cash management system at JPM which, for administrative convenience, permitted all of their respective bank accounts to be accessed through an account portal at JPM in the Debtor's name. Subsequent to the foreclosure, for administrative convenience, certain accounts of CFH and its affiliates (including accounts owned by entities that had been foreclosed upon) were administered in the same portal.

B. **The HQ Lease**

12. The Debtor entered into that certain Lease Agreement, dated as of August 4, 2021, by and between the Debtor, as tenant, and Albany Road-120 Interstate North LLC (the "HQ Landlord"), for space in suite 308 in building 300 at 120 Interstate North Parkway SE, Atlanta, Georgia 30339 (the "HQ Lease").

13. Although pursuant to the PSFA, as additional consideration, certain enumerated liabilities and agreements were assumed by WhiteHorse, the HQ Lease was not assumed. Under the TSA, WhiteHorse, through its assignee CFH, requested that the Debtor continue to permit CFH to use the Debtor's headquarters.

C. **The Oracle Agreement**

14. Pursuant to that PSFA, WhiteHorse foreclosed on the books and records of the Debtor and its subsidiaries, which were assigned to a subsidiary of CFH, Camarillo Fitness Opco, LLC ("CFO"). Neither WhiteHorse nor any of its affiliates assumed that certain Subscription Services Agreement v010118, dated as of May 31, 2018, between and the Debtor (the "Oracle Agreement") pursuant to which the records were maintained and administered. Under the TSA, WhiteHorse, through its assignee CFO, requested that the Debtor continue to permit CFO to use the Oracle Agreement.

**ARGUMENT**

15. Relief from the automatic stay is governed by 11 U.S.C. § 362(d), which provides, in part, as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> 1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

5

> 2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1)–(2).

16. Here, the facts warrant lifting the stay under sections 105 and 362(d)(1) and 362(d)(2) of the Bankruptcy Code.

### A. Cause Exists to Lift the Stay and the TSA Is Not Necessary for Reorganization.

17. Courts examine several factors, generally referred to as the *Sonnax* factors, when determining whether "cause" exists to lift the automatic stay. *See In re Sonnax Indus.*, 907 F.2d 1280, 1285 (2d Cir. 1990).[2] Not every *Sonnax* factor will be relevant to every case. *See Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999).

18. Here, multiple *Sonnax* factors support a determination that cause exists to lift the automatic stay under section 362(d)(1) of the Bankruptcy Code. As noted above, under the TSA, the Debtor provides services to WhiteHorse, CFH, CFO and their affiliates upon request. WhiteHorse and its assignees and their affiliates no longer require the services they requested under the TSA and, in any event, the services are being provided by employees of an affiliate of CFH at its expense solely for the purposes of CFH and its affiliates. Lifting the automatic stay to

---

[2] The *Sonnax* factors include: (i) whether relief would result in a partial or complete resolution of the issues; (ii) lack of any connection with or interference with the bankruptcy case; (iii) whether the other proceeding involves the debtor as a fiduciary; (iv) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (v) whether the debtor's insurer has assumed full responsibility for defending it; (vi) whether the action primarily involves third parties; (vii) whether litigation in another forum would prejudice the interests of other creditors; (viii) whether the judgment claim arising from the other action is subject to equitable subordination; (ix) whether movant's succession the other proceeding would result in a judicial lien avoidable by the debtor; (x) the interests of judicial economy and the expeditious and economical resolution of litigation; (xi) whether the parties are ready for trial in the other proceeding; and (xii) impact of the stay on the parties and the balances of harms. *In re Sonnax Indus.*, 907 F.2d at 1286.

allow WhiteHorse, CFH, CFO and their affiliates to terminate the TSA and to fully administer their bank accounts (i) will result in a complete resolution of the issues between the parties, (ii) cause no interference with the Chapter 7 Case, (iii) does not prejudice any of the Debtor's other creditors, indeed it will be a benefit to the Debtor's estate as the Debtor will no longer be a conduit for providing services that do no benefit the Debtor, and (iv) will relieve any harm currently being done to WhiteHorse, CFH, CFO and their affiliates while the stay remains in place as they will no longer be required to request and pay for services that are not necessary.

19. *First*, WhiteHorse, its assignees and their affiliates requested that services vis a vis the Aiken and Spartanburg Studios be provided to facilitate their operation pending their sales to third parties. Under the TSA, the services are being provided by Aiken and Spartanburg although the TSA is also with the Debtor. Potential third-party buyers have been identified to purchase the Aiken and Spartanburg Studios and such potential buyers have proposed to assume the leases for the Aiken and Spartanburg Studios, purchase the Aiken and Spartanburg assets and any asset related to Aiken and Spartanburg owned by CFH or its affiliates, and continue to operate the Studios as a going concern. However, given that no agreement for a third-party sale has been reached among the Trustee, the potential buyers and the Aiken and Spartanburg landlords, and a number of the employees of such studios have voluntarily left their employment making operation of such studios practically impossible, there is no longer any need for services. Accordingly, to the extent that such services are being provided by the Debtor under the TSA, cause exists for relief from the automatic stay to the extent required for WhiteHorse, its assignees and their affiliates to cease requesting that services be provided by Aiken and Spartanburg.

20. *Second*, as discussed above, Aiken and Spartanburg continue to receive cash proceeds that are property of WhiteHorse, its assignees or their affiliates. WhiteHorse foreclosed

on the Franchise Agreements and member agreements of the Aiken and Spartanburg Studios. While such studios operated, amounts collected by Aiken and Spartanburg under such agreements were held in the Aiken and Spartanburg bank accounts which are administered in the Debtor's account portal at JPM. One of the services requested of Aiken and Spartanburg was for such funds to be transferred to WhiteHorse, its assignees or their affiliates. However, given the involuntary petition, in an abundance of caution, the Transferred Employees ceased transferring such funds and, accordingly, proceeds which constitute the entire balance of funds on account in the Aiken and Spartanburg bank accounts are currently held in such accounts and have not been transferred to WhiteHorse, its assignees or their affiliates. Accordingly, as part of the process for terminating the TSA, relief from the automatic stay is sought, in an abundance of caution, to provide a Transferred Employee to Aiken and Spartanburg who shall have access to the bank accounts of Aiken and Spartanburg and who shall be permitted to transfer any and all cash held by Aiken and Spartanburg to WhiteHorse, its assignees or its affiliates at their direction.

21. *Third*, cause exists to lift the automatic stay to permit WhiteHorse, its assignees and their affiliates to cease requesting the service under the TSA to operate out of the Debtor's headquarters. This is simply a pass-through agreement. The Debtor's estate has no employees and virtually no assets, and, upon information and belief, no need for the HQ Lease. An affiliate of CFH has agreed to either assume the lease and to cure any existing defaults under the HQ Lease or enter into a new lease on the same terms as the current HQ Lease (or such other terms as may be agreed among the entity and the HQ Landlord). The entities have been unable to reach agreement with the Trustee for an assumption and assignment of the HQ Lease. Accordingly, WhiteHorse, CFH and their affiliates wish to cease requesting having such service provided and, instead, to enter into a new agreement with the HQ Landlord.

22. *Fourth*, cause exists to lift the automatic stay to permit WhiteHorse, CFH and their affiliates to cease requesting the service under the TSA to operate their books and records under the Oracle Agreement. Under the PSFA, WhiteHorse foreclosed upon the Debtor's and its subsidiaries' books and records. Such books and records were maintained pursuant to the Oracle Agreement, which was not assumed by WhiteHorse or its affiliates. An affiliate of CFH has agreed to either assume the Oracle Agreement and to cure any existing defaults under the Oracle Agreement or enter into a new agreement on the same terms as the current Oracle Agreement (or such other terms as may be agreed among the entity and Oracle). Although this is similarly simply a pass-through agreement, the entities have been unable to reach agreement with the Trustee for an assumption and assignment of the Oracle Agreement. Although such books and records are not property of the Debtor's estate, in an abundance of caution, WhiteHorse seeks to lift the automatic stay as set forth herein to cease requesting such services and, instead, to enter into a new agreement with Oracle.

23. *Fifth*, cause exists to grant WhiteHorse, CFH and their affiliates the authority to administer their accounts that are accessed through the Debtor's account portal at JPM. Pursuant to the PSFA, WhiteHorse foreclosed upon certain entities who have bank accounts at JPM that, for administrative purposes, are accessed through an account portal in the name of the Debtor. In addition, subsequent to the foreclosure, for administrative convenience, certain accounts of CFH and its affiliates were administered in the same portal. Although such bank accounts are not property of the Debtor's estate, given that the accounts are in a portal in the Debtor's name for administrative purposes, relief is sought in an abundance of caution to lift the automatic stay to permit WhiteHorse, its assignees and their affiliates to administer such accounts.

24. In any event, as noted above, under the TSA, the Debtor provides services to WhiteHorse, its assignees and their affiliates upon request and such entities no longer require the services. Moreover, the services are being provided solely for the purposes of WhiteHorse, its assignees and their affiliates. The Debtor thus has no equity in the TSA, does not benefit from the services, and given that these are cases under chapter 7, the TSA is not necessary for reorganization. Accordingly, the automatic stay should be modified and annulled to allow WhiteHorse, CFH, CFO and their affiliates to terminate the TSA and permit CFH and its affiliates to fully administer the bank accounts owned by CFH.

25. WhiteHorse has engaged in ongoing discussions and negotiation with the Trustee and her counsel and other parties in interest regarding the relief sought in this Motion but has been unable to reach agreement.

**B.    Waiver of the Fourteen-Day Stay Upon Entry of an Order Is Warranted.**

26. Bankruptcy Rule 4001(a)(3) imposes an automatic fourteen-day stay of an order granting relief from the automatic stay, unless the Court orders otherwise. Fed. R. Bankr. P. 4001(a)(3). As discussed above, lifting the automatic stay as requested herein will cause no interference with the Chapter 7 Case. Indeed, it will be a benefit to the Debtor's estate as the Debtor will no longer be a conduit for providing services that the Debtor itself does not actually provide and does not need. On the other hand, WhiteHorse, CFH, CFO and their affiliates suffer material harm while the automatic stay remains in place. Thus, to the extent any stay of the Court's order applies to an agreement to lift the automatic stay, WhiteHorse requests that the Court waive the fourteen-day stay of effectiveness.

## NOTICE

27. Notice of this Motion has been provided to (i) the Debtor, (ii) the Trustee and her counsel, and (iii) all parties in interest who have formally appeared and requested notice. In light

of the nature of the relief requested herein, WhiteHorse submits that no other or further notice is necessary.

## NO PRIOR REQUEST

28. No prior request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

29. WHEREFORE, for the reasons set forth herein, WhiteHorse respectfully requests that this Court enter an order, substantially in the form attached hereto, modifying and terminating the automatic stay permit WhiteHorse, its assignees and their affiliates (i) to terminate the TSA including (a) to provide a Transferred Employee who shall have access to the bank accounts of Aiken and Spartanburg and shall be permitted to transfer any and all cash held by Aiken and Spartanburg, all of which is the property of WhiteHorse, its assignees or their affiliates, to CFH or its affiliates, (b) to cease requesting services with respect to the HQ Lease and for CFH or its affiliates to enter into a new agreement with the HQ Landlord, (c) to cease requesting services with respect to the agreement with Oracle and for CFH or its affiliates to enter into a new agreement with Oracle, and (d) immediately thereafter to terminate the TSA with respect to the Debtor and the Excluded Entities, including Aiken and Spartanburg with respect to the provision of Buyer Provided Services and the Aiken and Spartanburg Transferred Employees, (ii) permitting CFH or its affiliates to fully administer the bank accounts owned by CFH and its affiliates and accessible for administrative convenience through the Debtor's account portal at JPM, who shall have access to such bank accounts, and (iii) granting such other and further relief as is just and proper.

Dated: April 22, 2025  
       New York, New York

WINSTON & STRAWN LLP

By: */s/ Carey D. Schreiber*
    Carey D. Schreiber
    200 Park Avenue
    New York, New York 10166-4193
    Telephone: (212) 294-6700
    Facsimile: (212) 294-4700

    *Counsel for WhiteHorse Capital Management, LLC*

# CERTIFICATE OF SERVICE

       I HEREBY CERTIFY on this 22nd day of April, 2025, a copy of the foregoing MOTION OF WHITEHORSE CAPITAL MANAGEMENT, LLC FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 362(d) AUTHORIZING RELIEF FROM THE AUTOMATIC STAY (I) TO TERMINATE THE TRANSITION SERVICES AGREEMENT AND (II) PERMITTING CFH AND ITS AFFILIATES TO ADMINISTER CERTAIN BANK ACCOUNTS was served electronically as a result of the e-filing of the document, or served by first class mail where indicated on the following:

Office of the US Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 510
New York, NY 10004-1408

Counsel to the Chapter 7 Trustee
La Monica Herbst & Maniscalco, LLP
3305 Jerusalem Ave., #201
Wantagh, NY 11793

Special Litigation Counsel to the Chapter 7 Trustee
Amini LLC
131 West 35th Street, 12th Floor
New York, NY 10001

                                                        */s/ Carey D. Schreiber*
                                                        Carey D. Schreiber