Avery Samet, Esq.
Jeffrey Chubak, Esq.
Yosef Trachtenberg, Esq.
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
ytrachtenberg@aminillc.com
Special Litigation Counsel for Lori Lapin
Jones, Esq. as Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| In re: | Chapter 7 |
|---|---|
| HONORS HOLDINGS, LLC, | 24-44875 (ess) |
| Debtor. | Re: ECF No. 38 |

**OBJECTION OF CHAPTER 7 TRUSTEE TO MOTION OF WHITEHORSE CAPITAL MANAGEMENT, LLC FOR ENTRY OF AN ORDER AUTHORIZING RELIEF FROM THE AUTOMATIC STAY (1) TO TERMINATE TRANSITION SERVICES AND AGREEMENT AND (2) TO PERMIT CAMARILLO FITNESS ENTITIES TO ADMINISTER CERTAIN BANK ACCOUNTS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 3

I. THE ALLEGED FORECLOSURE ................................................................................ 3

II. CASE STATUS .............................................................................................................. 4

III. THE MOTION ............................................................................................................... 5

ARGUMENT ................................................................................................................................ 6

I. LEGAL STANDARD APPLICABLE TO THE MOTION ............................................ 6

II. THE MOTION SHOULD BE DENIED FOR NOT BEING SUPPORTED WITH AUTHENTICATED DOCUMENTS UPON WHICH IT RELIES ................................. 6

III. STAY RELIEF TO TERMINATE THE TRANSITION SERVICES AGREEMENT SHOULD BE DENIED .................................................................................................. 6

IV. THE OTHER BRANCHES OF THE MOTION SHOULD BE DENIED ........................ 7

    A. Lease; Oracle Agreement ................................................................................... 7

    B. Buyer Provided Services; Aiken and Spartanburg Transferred Employees ........... 8

    C. Cash ..................................................................................................................... 9

    D. Bank Account Portal ........................................................................................... 9

V. WAIVER OF THE FEDERAL RULE OF BANKRUTPCY PROCEDURE 4001(a)(4) FOURTEEN-DAY STAY SHOULD BE DENIED ....................................................... 10

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Albion Disposal, Inc.*,
 217 B.R. 394 (W.D.N.Y. 1997) ............................................................................... 7

*In re Éclair Bakery Ltd.*,
 255 B.R. 121 (Bankr. S.D.N.Y. 2001) ................................................................. 10

*In re Henderson*,
 395 B.R. 893 (Bankr. D. S.C. 2008) .................................................................... 10

*In re Sonnax Indus., Inc.*,
 907 F.2d 1280 (2d Cir. 1990) ................................................................................ 6

*In re Tornado Pizza, LLC*,
 431 B.R. 503 (Bankr. D. Kan. 2010) ..................................................................... 7

**Statutes and Rules**

11 U.S.C. § 362 ............................................................................................... 6, 7, 8

11 U.S.C. § 365 .................................................................................................. 2, 8

11 U.S.C. § 704 ...................................................................................................... 3

E.D.N.Y. LBR 9014-2 ............................................................................................ 9

Fed. R. Bankr. P. 7001 ........................................................................................... 9

Fed. R. Bankr. P. 9017 ........................................................................................... 2

N.Y. U.C.C. § 9-620 .............................................................................................. 3

Lori Lapin Jones, Esq., solely in her capacity as Chapter 7 trustee ("Trustee") of Honors Holdings, LLC ("Debtor"), objects to the motion (ECF No. 38, "Motion") of WhiteHorse Capital Management, LLC ("WhiteHorse") for entry of an order authorizing relief from the automatic stay to: (1) terminate the alleged Transition Services Agreement with the Debtor ("TSA"); and (2) permit the Camarillo Fitness entities to "fully administer" the bank accounts alleged to be owned by them and accessible for administrative convenience through the Debtor's account portal at JPMorgan Chase Bank, and states:

## INTRODUCTION

1. As best as the Trustee can understand in the short time since her appointment, the Debtor was the sole member of limited liability companies that operated Orangetheory Fitness ("OTF") studios. WhiteHorse was the Debtor's prepetition lender and, at some point, determined it wanted to foreclose on its alleged collateral. To accomplish this, it installed an independent manager for the Debtor who, five months later, assisted in the implementation of a partial strict foreclosure by WhiteHorse and its assignees. It appears preliminarily that WhiteHorse's alleged partial strict foreclosure was with respect to certain desirable studios plus the intellectual property, customer lists, books and records, receivables and cash of certain undesirable studios. It also appears that WhiteHorse moved the assets into multiple new entities, all named Camarillo Fitness, which now employs former employees of the Debtor or its limited liability companies. The estate is left with the Debtor's membership interests in approximately 22 limited liability companies that previously operated OTF studios that have leases and old equipment. The estate is also left with a 2023 Kia vehicle.

2. Three petitioning creditors, including entities owed earnouts under OTF studio purchase agreements and a landlord (who were not being paid by the Debtor and apparently were not part of the desirable assets foreclosed upon) filed an involuntary Chapter 7 petition against the

1

Debtor. The involuntary petition was filed before WhiteHorse could foreclose upon or sell two studios (JM Aiken LLC and JM Spartanburg Fitness LLC) and before WhiteHorse could complete additional transactions to disentangle itself from the Debtor such as transferring the Debtor's office lease and an agreement with Oracle to one of the Camarillo Fitness entities. By the Motion, WhiteHorse essentially requests this Court assist it in tying up the rest of its foreclosure.

3. The Motion should be denied.

(a) First and foremost, the Motion is not supported by any competent evidence, including authenticated documents (let alone any documents), sworn facts, or other admissible evidence under the Federal Rules of Evidence, which apply in this case pursuant to Federal Rule of Bankruptcy Procedure 9017.

(b) Second, with respect to the office lease, the Trustee is within the statutory time under section 365(d)(4) of the Bankruptcy Code to assume or reject that lease, and compelling the Trustee to do so sooner is neither prudent nor grounds for relief from the automatic stay.

(c) Third, with respect to the Oracle agreement, it was neither listed on the Debtor's Schedule G (included in ECF No. 27), annexed to the Motion, nor provided to the Trustee. Under the circumstances, neither the Trustee nor the Court should be put in a position to make determinations on this agreement, nor is relief from the automatic stay appropriate.

(d) Fourth, to the extent there is cash in an account in the Debtor's name, that cash constitutes estate property, must be promptly turned over to the Trustee and, like in all other cases, its disposition will be subject to further orders of the Court.

(e) Last, as to the TSA, to the extent the agreement has not expired by its own terms, the Trustee requires a greater understanding as to whether the estate is entitled to services thereunder, and, if so, why there should be relief from the automatic stay on the basis that it benefits WhiteHorse.

4. Denial of the Motion may be without prejudice. WhiteHorse can then file a motion supported by competent evidence, as to which discovery rules would apply and which may culminate in an evidentiary hearing if opposed. During this time, the parties (clients and attorneys) can discuss whether there is a practical solution to some or all of the issues presented, which solution would serve to benefit the estate, address WhiteHorse's immediate requests and not foreclose the Trustee's investigation under section 704(a)(4) of the Bankruptcy Code or any potential estate causes of action.

## BACKGROUND[1]

### I. THE ALLEGED FORECLOSURE

5. WhiteHorse contends that:

- On September 25, 2024, WhiteHorse consummated a partial strict foreclosure under section 9-620 of the New York Uniform Commercial Code on the Debtor's equity interests in 137 subsidiaries, including 109 that operated OTF studios, and their assets, including membership agreements and the Debtor's books and records. (Motion at ¶6.)

- WhiteHorse subsequently foreclosed on an additional 12 subsidiaries that operated OTF studios. (*Id.* at ¶9.)

- The foreclosed assets were transferred to WhiteHorse's assignees, Camarillo Fitness Holdings, LLC and Camarillo Fitness Opco, LLC, or their affiliate, Camarillo Fitness Management Holdings, LLC. (*Id.* at ¶¶6, 10.)

- In connection with the foreclosure, the parties entered into the TSA, which is also dated September 25, 2024. (*Id.* at ¶7.)

6. The Trustee further understands that under the TSA:

- WhiteHorse agreed to fund the wind-down of the Debtor's remaining OTF studios in accordance with an agreed budget. (*Id.* at ¶7; ECF No. 7 ("Motion to Dismiss") at ¶¶7, 23.)

---

[1] The Trustee has no firsthand knowledge of these facts and they are derived from papers filed on the docket or information gained by the Trustee since her appointment.

- The Debtor agreed to provide transition services in furtherance of foreclosure, including allowing the Camarillo Fitness entities and their personnel to use the Debtor's office and Oracle services. (Motion at ¶¶13-14.)

- The Camarillo Fitness entities would have no obligation to hire or retain any of the Debtor's personnel or any "Transferred Employee", defined as an employee of the Debtor or any of its subsidiaries who moved to one of the Camarillo entities during the TSA's term (*id.* at ¶8), which runs until "the end of January 2025" (Motion to Dismiss at ¶7).

7. Neither the foreclosure agreement and related documents, the TSA nor the Oracle agreement were filed with the Motion.

8. To date, neither the foreclosure agreement and related documents nor the Oracle agreement were provided to the Trustee.

## II. <u>CASE STATUS</u>

9. This case was commenced on November 20, 2024 with the filing of an involuntary petition. (ECF No. 1.)

10. An Order for Relief was entered on March 3, 2025. (ECF No. 22.)

11. The Trustee was appointed on March 4, 2025. (ECF No. 24.)

12. In the less-than-two months since the Trustee's appointment, the Trustee has, <u>inter alia</u>:

- retained counsel and special counsel (ECF Nos. 31 and 37);

- met with the Debtor's counsel (twice);

- met with WhiteHorse's counsel, and continued communications through counsel;

- met with counsel for the petitioning creditors (twice);

- conducted the meeting of creditors pursuant to section 341 of the Bankruptcy Code;

- reviewed documents;

4

- obtained a buyer for the sale of the Debtor's 2023 Kia and filed a motion to approve that sale (ECF No. 32), which was approved at a hearing conducted on April 30, 2025;

- sent turnover letters to Debtor's counsel, former counsel, manager and financial advisor, and to WhiteHorse, Camarillo Fitness and their counsel;

- requested, received and reviewed multiple insurance policies; and

- met with JPMorgan Chase Bank to obtain information on certain existing bank accounts.

## III. THE MOTION

13. The Motion seeks to terminate the TSA, plus the following additional relief in furtherance of foreclosure:

- Stripping the Debtor's Aiken and Spartanburg subsidiaries of their cash based on WhiteHorse's allegation (Motion at ¶20) that all cash held by those entities is the property of the Camarillo Fitness entities. WhiteHorse proposes to do this by providing a "Transferred Employee who shall have access to the bank accounts of Aiken and Spartanburg and who is permitted to transfer any and all cash held by Aiken and Spartanburg" to the Camarillo Fitness entities. (ECF #38-1, "Proposed Order" at ¶1(i)(a).) The asserted justification is WhiteHorse's say-so that all such cash is property of the Camarillo Fitness entities, and WhiteHorse seeks such a finding. (*Id.*)

- Terminating "Buyer Provided Services" and provision of Transferred Employees to the Aiken and Spartanburg studios, and other "Excluded Entities" (*id.* at ¶1(i)(d)) on the ground that (Motion at ¶¶8, 18-19) such services are no longer needed.

- Permitting the Camarillo Fitness entities to "fully administer" bank accounts WhiteHorse states are owned by them by virtue of the foreclosure, but which are presently only accessible via the Debtor's account portal at JPMorgan Chase Bank. (Proposed Order at ¶1(ii).)

- Permitting the Camarillo Fitness entities "to cease requesting services with respect to the HQ Lease and permitting [them] to enter into a new agreement with the HQ Landlord." (*Id.* at ¶1(i)(b).)

- Permitting the Camarillo Fitness entities "to cease requesting services with respect to the agreement with Oracle and permitting [the Camarillo Fitness entities] to enter into a new agreement with Oracle." (*Id.* at ¶1(i)(c).)

5

# ARGUMENT

## I. LEGAL STANDARD APPLICABLE TO THE MOTION

14. Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition "operates as a stay … of … (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate [and] (6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case."

15. The Court may grant relief from the automatic stay under section 362(d) "(1) for cause [or] (2) with respect to a stay of an act against property under subsection (a) … if—(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization."

16. "The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than 'the debtor's equity in property.'" *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1285 (2d Cir. 1990).

## II. THE MOTION SHOULD BE DENIED FOR NOT BEING SUPPORTED WITH AUTHENTICATED DOCUMENTS UPON WHICH IT RELIES

17. WhiteHorse failed to carry its burden of proof because it has failed to attach authenticated documents on which its Motion is based, including the foreclosure documents. WhiteHorse's summary description and conclusions are inadmissible hearsay. Having failed to carry its burden of proof, the Motion should be denied without prejudice.

## III. STAY RELIEF TO TERMINATE THE TRANSITION SERVICES AGREEMENT SHOULD BE DENIED

18. To the extent the TSA has not terminated already on its own terms, the Trustee currently lacks sufficient information to make an informed judgment as to whether termination of

6

the TSA is warranted, or whether termination could potentially serve to defeat estate claims resulting from the alleged foreclosure. Accordingly, the Trustee objects to the branch of the Motion seeking relief from the automatic stay to terminate the TSA.

19. "[I]t is well-established (1) that a debtor's contractual rights . . . are included in the property of his estate and (2) that an attempt to terminate those rights is an act to exercise control over property of the debtor's estate." *In re Albion Disposal, Inc.*, 217 B.R. 394, 407–08 (W.D.N.Y. 1997).

20. WhiteHorse argues cause exists to terminate the TSA, because "WhiteHorse and its assignees and their affiliates no longer require the services they requested under the TSA" and that relief under section 362(d)(2) is warranted for substantially the same reason. (Motion at ¶¶18, 24.)

21. This argument, unsupported by any authority, should be rejected. That a creditor no longer requires services under a prepetition contract is not cause to grant relief from the automatic stay. If it were, any creditor could terminate any contract with a debtor in its sole and absolute discretion, regardless of the impact on the estate. That of course is not the law. Cause is also lacking because WhiteHorse has not articulated any harm from not terminating the TSA. Insofar as WhiteHorse is relying on some form of breach, "[b]reaches of contract generally give rise to a right of action for monetary damages. The Court finds them not relevant to relief from stay." *In re Tornado Pizza, LLC*, 431 B.R. 503, 520 (Bankr. D. Kan. 2010).

IV. **THE OTHER BRANCHES OF THE MOTION SHOULD BE DENIED**

  A. **Headquarter Lease; Oracle Agreement**

22. WhiteHorse states it seeks stay relief "to cease requesting services" with respect to the office lease and Oracle database (Proposed Order at ¶1(i)(b)-(c)) but does not cite any contractual obligation requiring it or the Camarillo Fitness entities to "request" such services. From

the Trustee's view, WhiteHorse is, in practical terms, asking the Court to compel the assumption and assignment of the HQ lease and Oracle agreement, or their rejection so the Camarillo Fitness entities can enter into similar agreements in their place. However, such relief is not contemplated by section 362(d) of the Bankruptcy Code.

23. Further, additional time is needed to determine whether to assume, assign or reject these agreements. As to the HQ lease, the Trustee must first determine what property of the Debtor is on the premises, and what property can be removed, sold, abandoned, etc. No explanation has been provided as to why the Trustee should not be given the full 120 days following entry of the Order for Relief under section 365(d)(4) to determine how to treat these agreements. As to the Oracle agreement, the Debtor did not list the agreement on its Schedule G, a copy has not been provided to the Trustee, and it was not part of the Motion. The Trustee is therefore not in a position to take any position with respect to the Oracle agreement at this time.

### B. Buyer Provided Services; Aiken and Spartanburg Transferred Employees

24. As noted above, WhiteHorse seeks relief from the automatic stay to stop providing Buyer Provided Services and stop providing Aiken and Spartanburg Transferred Employees to those studios. WhiteHorse also states that "there is no longer any need for [such] services" and employees because "a number of the employees of such studios have voluntarily left their employment making operation of such studios practically impossible." (Motion at ¶19.)

25. Significantly, this relief is only being sought "to the extent that such services are being provided . . . under the TSA." (*Id.*) WhiteHorse does not state whether any Buyer Provided Services are actually being provided nor has it disclosed whether there are any Aiken and Spartanburg Transferred Employees, and so Whitehorse does not actually allege that any provisions concerning Buyer Provided Services or Aiken and Spartanburg Transferred Employees present a burden to it or the Camarillo Fitness entities. Absent information concerning the value

of Buyer Provided Services and Aiken and Spartanburg Transferred Employees still being provided under the TSA, despite "operation of the studios [being] practically impossible", the Motion should be denied.

**C.** **Cash**

26. Relief from the automatic stay to transfer cash to the Camarillo Fitness entities based on WhiteHorse's say-so that the cash belongs to the Camarillo Fitness entities should be denied. To the extent cash is on deposit in an account titled in the name of the Debtor, it constitutes estate property and must be turned over to the Trustee. To the extent the subject cash is that on deposit in a non-debtor account (*e.g.*, Aiken, Spartanburg), the Trustee and the Court need clarity as to whether the Debtor has an interest in this cash. Regardless, a stay relief motion is an inappropriate method for determining this issue. See Federal Rule of Bankruptcy Procedure 7001(b). Even if the Court were to adjudicate this issue in this contested matter, an evidentiary hearing would be required, see E.D.N.Y. LBR 9014-2, and additional time should be afforded to the Trustee to investigate the issue.

**D.** **Bank Account Portal**

27. Relief from the automatic stay to permit the Camarillo Fitness entities to "fully administer" bank accounts accessible via the Debtor's JPMorgan Chase Bank account portal, which WhiteHorse states are owned by them, should be denied. The relief is being sought only for "administrative convenience." (Proposed Order at ¶1(ii).) Instead of asking the Court to provide access to the Debtor's portal, which may present risks to estate property, the Camarillo Fitness entities can simply open up new bank accounts and shift their cash management system out of the Debtor's portal. That path would serve to avoid giving non-debtors access to bank accounts in which the Debtor may have an interest.

## V. WAIVER OF THE FEDERAL RULE OF BANKRUPTCY PROCEDURE 4001(a)(4) FOURTEEN-DAY STAY SHOULD BE DENIED

28. "In the absence of controlling precedent . . . when contested, the rule should be waived only when there is a clear showing by the movant of equitable reasons that would warrant the waiver of the presumptive stay afforded to a debtor by the rule." *In re Henderson*, 395 B.R. 893, 904 (Bankr. D. S.C. 2008) (citing *In re Éclair Bakery Ltd.*, 255 B.R. 121, 143 n.42 (Bankr. S.D.N.Y. 2001)).

29. The reason given for the requested waiver is that "[a]s discussed above, lifting the automatic stay as requested herein will cause no interference with the Chapter 7 Case" whereas the Camarillo Fitness entities would "suffer material harm while the automatic stay remains in place." (Motion at ¶26.) This self-serving conclusion is not a basis for granting relief from the fourteen-day stay.

30. The Trustee, upon review of all relevant information, will make a determination as to whether the relief requested interferes with the Chapter 7 case, not WhiteHorse. The Trustee presently has insufficient information to make such a determination.

## CONCLUSION

31. For the reasons discussed above, the Motion should be denied.

Dated: New York, NY
May 2, 2025

Amini LLC

/s/ Jeffrey Chubak
Avery Samet, Esq.
Jeffrey Chubak, Esq.
Yosef Trachtenberg, Esq.
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
ytrachtenberg@aminillc.com
Special Litigation Counsel for Lori Lapin Jones, Esq. as Chapter 7 Trustee