UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| HONORS HOLDINGS, LLC, | Case No.: 24-44875-ess |
| Debtor. | |

-------------------------------------------------------x

**STIPULATION AND ORDER RESPECTING MOTION OF WHITEHORSE CAPITAL MANAGEMENT, LLC FOR AN ORDER AUTHORIZING RELIEF FROM THE AUTOMATIC STAY AND RELATED ISSUES**

This stipulation ("**Stipulation**") is made as of the 14th day of August, 2025, ("**Stipulation Date**") by and among: (i) Lori Lapin Jones, Esq., solely in her capacity as Chapter 7 Trustee ("**Trustee**") of the bankruptcy estate of Honors Holdings, LLC ("**Debtor**"); (ii) WhiteHorse Capital Management, LLC, in its capacity as Agent[1] (in such capacity "**WhiteHorse**"); (iii) Camarillo Fitness Holdings, LLC ("**CFH**") and its affiliates set forth in the annexed Exhibit A[2], including: (a) Camarillo Fitness Opco, LLC ("**CFO**"); and (b) Camarillo Fitness Management, LLC ("**CFM**")(collectively, "**Camarillo**"); (iv) AF5 120 INW, LLC (as assignee of Albany Road-120 Interstate North LLC) ("**HQ Landlord**") solely with respect to Recital Z, Section B and paragraphs 29 to 37; (v) New Market - East Gate, LLC ("**Aiken Landlord**") solely with respect to Recital I, and paragraphs 16, 17 and 29 to 37; and (vi) ERP Hillcrest, LLC ("**Spartanburg Landlord**", and together with the Aiken Landlord, "**Aiken and Spartanburg Landlords**") solely with respect to Recital I, and paragraphs 16, 18-22 and 29 to 37. The Trustee, WhiteHorse, CFH, CFO, CFM, the HQ Landlord, and the Aiken and Spartanburg Landlords are each sometimes

---

[1] Agent means WhiteHorse Capital Management, LLC, as Agent for the Lenders (in such capacity, together with its successors and permitted assigns, including any assignee formed by the Agent and designated as an assignee for purposes of the PSFA and TSA (each as defined below)) under that certain Credit Agreement, dated as of September 6, 2019 (as same has been and may be further amended, restated, amended and restated, supplemented, extended, or otherwise modified from time to time).

[2] An unredacted copy has been provided to the Court.

individually referred to herein as a "**Party**" and are collectively sometimes referred to herein as the "**Parties**", but limited as set forth above as relates to the HQ Landlord, and the Aiken and Spartanburg Landlords.

## RECITALS

A. On November 20, 2024 ("**Petition Date**"), an involuntary Chapter 7 bankruptcy case was commenced against the Debtor by petitioning creditors CA 531 86th Street LLC, BOTF, LLC and Core2000 LLC (collectively, "**Petitioning Creditors**") in the United States Bankruptcy Court for the Eastern District of New York ("**Court**").

B. On December 13, 2024, a motion to dismiss the involuntary petition [Docket No. 7] ("**Motion to Dismiss**") was filed on the Debtor's behalf. The hearing on the Motion to Dismiss was adjourned from time to time. On February 26, 2025, the Debtor and the Petitioning Creditors filed a stipulation [Docket No. 20] pursuant to which, among other things, the Debtor agreed to consent to the entry of an Order for Relief and to withdraw its Motion to Dismiss.

C. On March 3, 2025, the Order for Relief dated February 27, 2025 [Docket No. 22] was entered on the Court's electronic docket against the Debtor, on consent.

D. On March 4, 2025, Lori Lapin Jones, Esq. was appointed as interim Chapter 7 Trustee of the Debtor's estate [Docket No. 24].

E. On April 7, 2025, the Trustee examined the Debtor at an initial meeting of creditors pursuant to section 341(a) of the Bankruptcy Code.

F. According to the Debtor's Schedule G, as of the Petition Date, the Debtor was a party to that certain lease agreement dated as of August 4, 2021 ("**HQ Lease**") with the HQ Landlord for the premises located at 120 Interstate North Parkway SE, Atlanta, Georgia 30339 ("**Headquarters**").

G. Upon information and belief, as of the Petition Date, the Debtor was a party to that certain Subscription Services Agreement identified as number v010118, dated as of May 31, 2018 for cloud-based services from Oracle America, Inc. as the successor in interest to NetSuite, Inc. ("**Oracle**")(as same has been amended, supplemented or otherwise modified from time to time, "**Oracle Agreement**").

H. Upon information and belief, the current term of the Oracle Agreement expires on May 31, 2027.

I. According to the Debtor's Schedule A/B, as of the Petition Date, the Debtor was the equity owner of: (i) JM Aiken LLC ("**Aiken**"), which operates Orangetheory Fitness studio #1524 in Aiken, South Carolina ("**Aiken Studio**") pursuant to that certain lease agreement dated as of June 30, 2021 ("**Aiken Lease**") with the Aiken Landlord for the premises located at 238 East Gate Drive, Aiken, South Carolina, 29803 ("**Aiken Premises**"); and (ii) JM Spartanburg Fitness LLC ("**Spartanburg**"), which operates Orangetheory Fitness studio #0884 in Spartanburg, South Carolina ("**Spartanburg Studio**") as the Tenant pursuant to that certain lease agreement dated as of May 31, 2018 ("**Spartanburg Lease**") with the Spartanburg Landlord for the premises located at 1985 E. Main St., Store # HC3 aka Suite 3, Spartanburg, South Carolina, 29307 ("**Spartanburg Premises**").

J. By motion dated April 22, 2025 [Docket No. 38] ("**Stay Relief Motion**"), WhiteHorse sought relief from the automatic stay, among other things, to permit WhiteHorse and Camarillo: (i) to terminate that certain Transition Services Agreement, dated as of September 25, 2024, between the Debtor and WhiteHorse ("**TSA**"); and (ii) to fully administer certain bank accounts owned by Camarillo and accessible for administrative convenience through the Debtor's account portal ("**HH JPM Portal**") at JPMorgan Chase ("**JPM**").

K. WhiteHorse asserts, among other things, that on September 25, 2024, the Debtor and WhiteHorse entered into that certain Partial Strict Foreclosure Agreement ("**PSFA**") under Section 9-620 of the New York Uniform Commercial Code pursuant to which, among other things, the equity interests in 137 subsidiaries of the Debtor, including 109 subsidiaries that operate Orangetheory Fitness studios, certain other assets of the Debtor, including its books and records, and assets of other of the Debtor's subsidiaries that were not foreclosed upon ("**Excluded Entities**"), including, but not limited to, the membership agreements and proceeds therefrom and the books and records of each of the Excluded Entities, if any, and the option to acquire the Debtor's membership interests in the Excluded Entities, were accepted by WhiteHorse (and assigned to CFH and CFO as set forth in the PSFA) in exchange for the partial satisfaction ("**Alleged Partial Strict Foreclosure**") of $70 million of the more than $114 million in secured obligations WhiteHorse alleges it was owed by the Debtor (collectively, "**Obligations**").

L. WhiteHorse asserts, among other things, that on September 25, 2024 ("**TSA Effective Date**"), the Debtor and WhiteHorse also entered into the TSA pursuant to which the Debtor agreed to provide certain requested services to CFH and its affiliates and facilitate the transfer of personnel, and WhiteHorse, through CFH, agreed to, among other things, fund a budget to, among other things, permit the Debtor to operate the twenty-two (22) Orangetheory Fitness studio subsidiaries that were not acquired by CFH, and to permit personnel employed by CFH or its affiliates to provide services to the Debtor and its subsidiaries on the terms set forth therein.

M. WhiteHorse asserts that, on November 8, 2024, WhiteHorse exercised its rights under the PSFA to foreclose on the equity interests of an additional twelve (12) Excluded Entities.

N. WhiteHorse asserts that, under the TSA, WhiteHorse, through its assignee CFH, requested that the Debtor continue to permit CFH to use the Headquarters. CFH used the

Headquarters through May 31, 2025. WhiteHorse asserts that the Debtor has no interest in, among other things, any of the personal property remaining at the Headquarters.

O. WhiteHorse asserts that the Debtor and its affiliates operated a cash management system at JPM which, for administrative convenience, permitted all of their respective bank accounts to be accessed through the HH JPM Portal. WhiteHorse further asserts that, subsequent to the Alleged Partial Strict Foreclosure, for administrative convenience, certain accounts of CFH and its affiliates (including accounts owned by entities that allegedly had been foreclosed upon) with account numbers ending in x8333, x2192, and x2069 (collectively, "**Camarillo JPM Accounts**") were administered in the HH JPM Portal.

P. WhiteHorse asserts that, pursuant to the TSA, (i) CFH was permitted to offer employment to any of the Debtor's or the Debtor's subsidiaries' employees who remained employed thereby as of the Closing Date of the TSA and (ii) any such employee that accepted employment with CFH or one of its subsidiaries pursuant to the TSA (each a "**Transferred Employee**", collectively "**Transferred Employees**") was made available the Debtor or the Debtor's subsidiaries to continue to provide transition services on behalf of the Debtor or the Debtor's subsidiaries, as applicable, to CFH ("**Buyer Provided Services**") until such services are no longer needed by CFH or its affiliates. WhiteHorse asserts that, after the closing of the PSFA, CFM offered employment to all of the Debtor's employees, including the employees of the Aiken Studio and the Spartanburg Studio. Certain of those employees, including employees at the Aiken Studio and the Spartanburg Studio, accepted employment with CFM and are currently Transferred Employees.

Q. WhiteHorse asserts that, pursuant to the TSA, the Transferred Employees at Aiken and Spartanburg are provided by CFM at its expense to each of Aiken and Spartanburg to provide a Buyer Provided Service to operate the Aiken Studio and the Spartanburg Studio.

R. WhiteHorse asserts that Aiken and Spartanburg continue to receive cash proceeds from assets listed on Schedule B to the PSFA, including from membership agreements, which WhiteHorse asserts that, pursuant to the PSFA, all right, title, and interest in were accepted by WhiteHorse (and assigned to CFH and CFO as set forth in the PSFA) as of the Closing Date of the PSFA, and such amounts remain in bank accounts held by Aiken and Spartanburg at JPM with account numbers ending in x1067 and x6798, respectively (collectively, "**Aiken and Spartanburg JPM Accounts**") and at the credit card processing company for Aiken and Spartanburg ("**Aiken and Spartanburg CC Funds**").

S. As of July 28, 2025, the balance in the Aiken and Spartanburg JPM Accounts was not less than $42,978.29 in the aggregate and the amount of Aiken and Spartanburg CC Funds was not less than $236,831.93 in the aggregate, all of which WhiteHorse asserts is the property of WhiteHorse, its assignees or their affiliates, including Camarillo.

T. According to the Debtor's Schedule D and as asserted by WhiteHorse, WhiteHorse is a secured creditor of the Debtor with a secured claim of not less than $44,411,461.46.

U. The Trustee opposed the Stay Relief Motion [Docket No. 45] ("**Objection**").

V. By motion dated May 1, 2025 [Docket No. 40] ("**Motion to Extend Time**"), the Trustee seeks entry of an Order pursuant to section 365(d)(1) of the Bankruptcy Code extending the Trustee's time to assume or reject executory contracts from May 2, 2025 through and including July 1, 2025, without prejudice to request additional extensions of time. By Order entered on May

12, 2025, the Trustee's time to assume or reject executory contracts was extended through and including May 23, 2025.

W. By Order entered on May 2, 2025 [Docket No. 47] ("**<u>Vehicle Sale Order</u>**"), the Court authorized and approved the Trustee's sale of the Debtor's 2023 Kia Stinger ("**<u>Vehicle</u>**") to AJ's Auto Inc. for the sum of $23,500.00. On May 6, 2025, AJ's Auto Inc. closed on the sale of the Vehicle. The Trustee asserts that she collected the total sum of $23,500.00 from AJ's Auto Inc. ("**<u>Vehicle Sale Proceeds</u>**").

X. Pursuant to the Vehicle Sale Order, the Vehicle was sold, among other things, free and clear of any and all monetary liens, claims, encumbrances, and/or interests of whatever kind or nature, if any, with any such liens to attach to the Vehicle Sale Proceeds and the Trustee's rights are reserved to contest or otherwise challenge any lien that may be asserted against the Vehicle Sale Proceeds. WhiteHorse asserts it may have a security interest in the Vehicle Sale Proceeds.

Y. WhiteHorse asserts that CFH surrendered the Headquarters to the HQ Landlord on May 31, 2025 ("**<u>HQ Surrender Date</u>**"). WhiteHorse asserts that any and all laptops (excluding laptops in the possession of Camarillo employees), books and records relating to the Debtor or any Excluded Entity, if any, located at the Headquarters (collectively, "**<u>Records</u>**") were removed from Headquarters prior to the HQ Surrender Date and are being stored by CFH.

Z. HQ Landlord asserts that, pursuant to the HQ Lease, the sum of $35,858.80 is owed to HQ Landlord through the HQ Surrender Date for accrued and unpaid rent and CAM ("**<u>HQ Balance</u>**"), including $28,678.00 reflecting amounts due to the HQ Landlord under the HQ Lease from the TSA Effective Date through the HQ Surrender Date ("**<u>HQ March, April, May 2025 Rent/CAM</u>**"). Notwithstanding anything herein, other than as set forth in Paragraph 6 below, neither WhiteHorse nor Camarillo shall be responsible for any claims of the HQ Landlord,

including the HQ GUC (as defined below) and any claims for rejection damages, that may be asserted by the HQ Landlord.

AA. The Trustee asserts that she has insufficient information and has had insufficient time to investigate the validity of the assertions made by WhiteHorse and any defenses, objections or responses thereto.

BB. Without the Parties conceding any issues or waiving any rights or remedies, the Parties recognize it is prudent to address on an interim basis the issues raised in the Stay Relief Motion, the Objection, the Motion to Extend Time, the Vehicle Sale Order, and claim of WhiteHorse to the Vehicle Sale Proceeds for administrative convenience and to avoid costs and time litigating.

CC. The Parties have engaged in arm's-length negotiations with their respective counsel. The Parties determined to resolve their disputes over the Stay Relief Motion, the Objection, the Motion to Extend Time, the Vehicle Sale Order, and the Vehicle Sale Proceeds, which are resolved on the terms and conditions set forth herein.

## TERMS AND CONDITIONS

1. This Stipulation is subject to and contingent on the Court "So Ordering" this Stipulation. This Stipulation shall be effective upon Court entry of the So Ordered Stipulation without any further action by any of the Parties ("**Effective Date**").

## A. Estate Administration Funding

2. CFH shall pay or cause to be paid by CFO or CFM the sum of $75,000.00 to the Trustee ("**Estate Payment**") by wire transfers as follows: (a) the sum of $25,000.00 upon execution of this Stipulation; and (b) the sum of $50,000.00 promptly following the Effective Date.

3. No portion of the Estate Payment shall be used to investigate, prosecute or challenge WhiteHorse or Camarillo (and any of their respective heirs, successors, administrators, and/or assigns), or the Obligations, the PSFA, the TSA, the Alleged Partial Strict Foreclosure and/or the alleged liens and claims of WhiteHorse or Camarillo (and any of their respective heirs, successors, administrators, and/or assigns) against the Debtor or its bankruptcy estate.

**B. HQ Lease/Records**

4. The HQ Lease shall be deemed rejected effective as of May 31, 2025 ("**HQ Rejection Date**") without any further action or notice of termination by any of the Parties thereto and without any further order of the Court.

5. The Debtor's interest (if any) in all supplies, furniture, fixtures and equipment (but not any Records, which are specifically excluded) (collectively, "**Personal Property**") that remains at the Headquarters as of the Effective Date shall be deemed abandoned to the HQ Landlord without further notice or court order pursuant to section 554 of the Bankruptcy Code. The Trustee has no objection to the HQ Landlord disposing of the Personal Property in any legal manner in its sole discretion. For the avoidance of doubt, any stay under section 362 of the Bankruptcy Code shall be deemed modified to allow the HQ Landlord to dispose the Personal Property pursuant to this Stipulation without any further order of the Court. In the event the HQ Landlord believes that any Records may remain in the Headquarters after the Effective Date, the HQ Landlord shall promptly notify the Trustee and WhiteHorse, and the Trustee and/or Whitehorse shall have ten (10) Business Days from the date of such notification to recover such Records from the Headquarters, and thereafter the HQ Landlord shall have no further obligation or responsibility with respect to such Record and may dispose of such Record as it sees fit.

6. CFH shall pay or cause to be paid by another Camarillo entity the HQ March, April, May 2025 Rent/CAM (i.e. $28,678.00), to the HQ Landlord within three (3) Business Days following the Effective Date. Notwithstanding anything herein, other than as set forth in the prior sentence in this Paragraph 6, neither WhiteHorse nor Camarillo shall be responsible for any claims of the HQ Landlord, including the HQ GUC and any claims for rejection damages, that may be asserted by the HQ Landlord.

7. The HQ Landlord shall not assert a priority or administrative claim against the Debtor's estate. The Trustee and HQ Landlord stipulate and agree that HQ Landlord shall have an allowed general unsecured claim against the Debtor's estate in the amount of $123,751.12 (the "**HQ GUC**"). Notwithstanding anything herein, the HQ Landlord shall be permitted to apply the security deposit it is currently holding under the HQ Lease in the amount of $6,666.81 (the "**HQ Security Deposit**") against the HQ GUC without further order of the Court, and the automatic stay, to the extent that it may apply, is hereby deemed modified to allow such application of the HQ Security Deposit to the HQ GUC without further order of the Court. The HQ Landlord shall file proof of the HQ GUC in the amount of $117,084.31 with the Court on or before any deadline to file claims against the Debtor's estate, or the HQ GUC shall be forever waived. The HQ GUC, if timely filed in accordance with this paragraph, shall not be subject to any offset, setoff, objection, recoupment, challenge, or other action by the Debtor or the Trustee following its allowance, except to the extent Headquarters are relet. Except as otherwise set forth herein, each of the Trustee, on behalf of the Debtor's Chapter 7 estate, WhiteHorse, Camarillo and the HQ Landlord hereby waives the right to assert any claims against each other relating in any way to the HQ Lease and/or the Headquarters and all related matters arising therefrom.

8. Through and including March 31, 2026, CFO shall preserve the Records following

which: (a) CFO may abandon the Records; or (b) the Trustee may seek turnover of the Records by CFO at the sole expense of the Debtor's estate (the current monthly storage amount is approximately $250.00, or approximately $3,000 annually); provided that Camarillo and WhiteHorse reserve the right to object to such turnover request and, pending final resolution of any such objection, the Records will continue to be preserved by CFO at the sole expense of the Debtor's estate.

**C. Oracle Agreement**

9. As of the Effective Date, the Oracle Agreement shall be assumed and assigned to CFO and the Trustee is authorized to execute the assignment agreement, substantially in the form annexed as Exhibit B. As of the Effective Date, there are no amounts due to Oracle under the Oracle Agreement.

10. Through and including March 31, 2026, to the extent permitted by Oracle, CFO shall continue to provide at least one counsel to the Trustee read-only access as provided to the Trustee's special litigation counsel on May 16, 2025 to any books and records concerning the Debtor or any Excluded Entity prior to the Closing Date of the Alleged Partial Strict Foreclosure that are maintained pursuant to the Oracle Agreement. To the extent not required otherwise by Oracle, WhiteHorse and Camarillo shall not in any respect restrict the read-only access to books and records maintained pursuant to the Oracle Agreement provided to at least one counsel as provided to the Trustee's special litigation counsel on May 16, 2025.

**D. JPM Accounts**

11. Upon the Effective Date, WhiteHorse and Camarillo are authorized to provide a Transferred Employee to Aiken and Spartanburg who: (a) shall have access to: (i) the Aiken and Spartanburg JPM Accounts; and (ii) Aiken and Spartanburg's credit card processor; (b) shall be

permitted to transfer or direct the transfer of: (i) any and all cash held by Aiken and Spartanburg in the Aiken and Spartanburg JPM Accounts; and (ii) any and all Aiken and Spartanburg CC Funds, in each case, to WhiteHorse, its assignees or their affiliates at his or her direction (collectively, (i) and (ii), "**Aiken and Spartanburg Funds Transfer**"); and (c) shall be permitted to direct Aiken and Spartanburg's credit card processor to cease charging Aiken and Spartanburg members; provided that all rights of the Trustee and the Debtor's estate with respect to such cash are expressly preserved, as set forth more fully in Section G (Reservation of Rights/No Releases) below. The Trustee and the Chapter 7 estate shall have no obligations or liabilities to or with respect to such Transferred Employee (including with respect to any action or inaction by such Transferred Employee), all of which shall be the obligation of CFH.

12. Upon the Effective Date, WhiteHorse and Camarillo are authorized: (a) to access the HH JPM Portal to administer the Camarillo JPM Accounts, which, for administrative purposes, are accessible through the HH JPM Portal; and (b) to transfer any and all cash in such Camarillo JPM Accounts to WhiteHorse, its assignees or their affiliates, including Camarillo, at their direction ("**HH JPM Transfer**"); provided that all rights of the Trustee and the Debtor's estate with respect to such cash are expressly preserved as set forth more fully in Section G (Reservation of Rights/No Releases) below.

13. The Trustee asserts that accounts of the Debtor and any funds in accounts of the Debtor are property of the Debtor's estate. After the Effective Date, the Trustee may close any accounts of the Debtor at JPM and may seek turnover of any funds in any account(s) of the Debtor at JPM, subject to WhiteHorse's asserted liens which shall attach to such funds.

14. CFH shall indemnify the Trustee in accordance with the procedure set forth in Section 11(d) of the TSA (as if such provision is set forth herein) against any claims brought

against the Trustee or the Chapter 7 estate arising from the Aiken and Spartanburg Funds Transfer and the HH JPM Transfer.

**E. TSA Termination**

15. As of the Effective Date, without any further action or notice by any of the Parties: (a) WhiteHorse and Camarillo shall be deemed to have ceased requesting that services be provided by the Debtor and the Excluded Entities under the TSA with respect to the HQ Lease nunc pro tunc to the HQ Surrender Date and the Oracle Agreement; and (b) other than as set forth in Section D above, services shall cease for Aiken and Spartanburg with respect to the provision of Buyer Provided Services and the Aiken and Spartanburg Transferred Employees. As of the date of the completion of the Aiken and Spartanburg Funds Transfer, the TSA shall be deemed rejected, and the Term of the TSA shall be deemed terminated ("**TSA Termination Date**"), without any further action or notice of termination by any of the Parties.

**F. Aiken & Spartanburg**

16. Provided that each of the Aiken and Spartanburg Landlords waives claims against the Debtor's estate, the Trustee shall not: (a) object to any assumption of the Aiken Lease or the Spartanburg Lease by a new tenant or the Aiken and Spartanburg Landlords' re-letting of the Aiken Premises or the Spartanburg Premises to new tenants; and/or (b) object to the abandonment of personal property of the Debtor, if any, or claim any interest in the personal property that may be located at the Aiken Premises or the Spartanburg Premises by the Chapter 7 estate (to the extent the Chapter 7 estate has any interest). Notwithstanding anything herein, neither WhiteHorse nor Camarillo shall be responsible for any claims of the Aiken and Spartanburg Landlords, including any claims for rejection damages, that may be asserted by the Aiken and Spartanburg Landlords.

17. Notwithstanding anything herein, the Aiken Landlord shall be permitted to use the Security Deposit (as defined in the Aiken Lease) with respect to any rent that has or may accrue under the Aiken Lease, as provided for in any Order approving the Stipulation and Agreed Order Regarding New Market – East Gate, LLC Lease [Docket No. 64] that has been agreed to by the parties to same (the "**Aiken Landlord Stipulation**"). Upon the Stipulation Effective Date (as defined in the Aiken Landlord Stipulation), WhiteHorse agreed to release any and all liens it may have on the Security Deposit and on the personal property located on the Aiken Premises, as provided in the Aiken Landlord Stipulation.

18. Each of the Trustee, on behalf of the Debtor's Chapter 7 estate, WhiteHorse, Camarillo and the Spartanburg Landlord agree that the automatic stay does not apply to the Spartanburg Lease as the Spartanburg Tenant has not filed for bankruptcy; however, to the extent the automatic stay applies to the Spartanburg Lease, the Trustee has no objection to a modification of the automatic stay to permit the Spartanburg Landlord to terminate the Spartanburg Lease or otherwise evict the Spartanburg Tenant from the Spartanburg Studio.

19. The Spartanburg Landlord hereby waives its right to assert any claims against the Debtor and its estate (including any claims for rent accruing both prior to and after the Petition Date and that will continue to accrue prior to the Effective Date and any amounts owing under any guaranty), except that on and after the Effective Date, notwithstanding anything herein, the Spartanburg Landlord shall be permitted to use the security deposit under the Spartanburg Lease, the "**Spartanburg Security Deposit**") with respect to any base rent or additional rent that has or may accrue under the Spartanburg Lease. To the extent the automatic stay applies to the Spartanburg Security Deposit, the Trustee has no objection to a modification of the automatic stay

to permit the Spartanburg Landlord to apply the Spartanburg Security Deposit as provided in this paragraph.

20. Each of the Trustee, on behalf of the Debtor's Chapter 7 estate, WhiteHorse, Camarillo and the Spartanburg Landlord hereby waives the right to assert any claims against each other relating in any way to the Spartanburg Lease and/or the Spartanburg Premises and all related matters arising therefrom including the Guarantees of Debtor.

21. The Debtor's interest (if any) in all personal property furniture, fixtures, and equipment located that remains at the Spartanburg Premises on the Effective Date (the "**Spartanburg Personal Property**") shall be deemed abandoned to the Spartanburg Landlord without further notice or court order pursuant to section 554 of the Bankruptcy Code. The Trustee has no objection to the Spartanburg Landlord disposing of the Spartanburg Personal Property in any legal manner in its discretion. For the avoidance of doubt, any stay under section 362 of the Bankruptcy Code shall be deemed modified to allow the Spartanburg Landlord to dispose the Spartanburg Personal Property pursuant to this Stipulation.

22. On the Effective Date, without further action by any Party, WhiteHorse hereby releases any and all liens it may have on the Spartanburg Security Deposit and on the Spartanburg Personal Property. Promptly following the Effective Date, WhiteHorse shall file a UCC-3 statement providing for the termination of such liens.

**G. Reservation of Rights/No Releases**

23. The Parties each acknowledge and agree that other than as set forth herein in the Terms and Conditions: (a) nothing in this Stipulation shall constitute or be construed as an admission or adjudication, express or implied as to any matters concerning WhiteHorse, Camarillo or their affiliates, officers, directors, employees or professionals, including but not limited to with

respect to the Obligations, the Alleged Partial Strict Foreclosure, the PSFA, the TSA, and/or the extent, nature and validity of WhiteHorse's asserted liens and claims against the Debtor, whether asserted or unasserted, or any issue of fact, law, or liability of any type or nature with respect to the foregoing; and (b) all of the Parties' rights, claims and remedies are expressly reserved and preserved.

24. The Parties understand and agree that nothing in this Stipulation shall be deemed a release to WhiteHorse, Camarillo or their respective affiliates, officers, directors, employees or professionals by or on behalf of the Trustee or the Debtor's estate.

**H. Additional Provisions**

25. WhiteHorse and Camarillo each waive any and all alleged liens and/or security interests, whether asserted or unasserted, in the Vehicle Sale Proceeds and the Estate Payment.

26. WhiteHorse and Camarillo waive any and all rights to the Estate Payment; provided, for the sake of clarity, that neither WhiteHorse nor Camarillo waive any rights with respect to paragraph 3 above.

27. WhiteHorse and Camarillo shall not assert any Chapter 7 administrative expense claims against the Debtor's estate arising through and including the Effective Date of this Stipulation arising from: (a) the Vehicle; (b) payment of the amounts in paragraph 2, (c) any expenses incurred in connection with paragraphs 6, 8, 9, 10, 11, 12, 14, 16, 17 and 19; (d) any damages arising from the termination of the TSA (provided that all Parties' rights are reserved with respect to claims for damages arising under the TSA); (e) the filing of the Stay Relief Motion; and (f) the drafting and negotiation of this Stipulation. The Trustee reserves all rights to object to any administrative claim filed by WhiteHorse or Camarillo.

28. WhiteHorse and Camarillo shall not object to the Motion to Extend Time.

29. This Stipulation constitutes the entire agreement between and among the Parties regarding the subject matter of this Stipulation and supersedes all prior and contemporaneous agreements, negotiations and discussions between the Parties hereto and/or their respective counsel with respect to the subject matters evidenced by this Stipulation, *provided*, that nothing herein modifies the terms of the Aiken Landlord Stipulation. Any amendment to this Stipulation must be in writing and signed by each of the Parties hereto and must expressly state that it is the intention of each of the Parties hereto to amend the Agreement. It is the intention of the Parties that this paragraph be construed as a merger clause, and that this Stipulation be construed as an integrated document. No waiver of any provision of this Stipulation shall be deemed to constitute a waiver of any other provision hereof, whether or not similar, nor shall such waiver constitute a continuing waiver.

30. This Stipulation has been fully negotiated by the Parties. Each Party acknowledges and agrees that this Stipulation has been drafted jointly, and the rule that ambiguities in an agreement or contract may be construed against the drafter shall not apply in the construction or interpretation of this Stipulation.

31. Each Party to this Stipulation shall bear its own attorneys' fees and costs.

32. This Stipulation shall be binding upon the Parties and their respective heirs, executors, successors, administrators and assigns.

33. This Stipulation may not be amended or modified other than in writing executed by each of the Parties.

34. The Parties do not intend to confer any benefit by or under this Stipulation upon any person or entity other than the Parties hereto and their respective successors and permitted assigns.

35. This Stipulation and any claim related directly or indirectly to this Stipulation shall be governed by and construed in accordance with the laws of the State of New York.

36. This Stipulation may be executed and delivered in any number of counterparts, each of which so executed and delivered shall be deemed to be an original and all of which shall constitute one and the same document. Each Party may evidence its execution of this Stipulation by delivery to the other Parties of scanned or faxed copies of its signature, with the same effect as the delivery of an original signature.

37. The Court ***may*** ~~shall~~ retain ~~exclusive~~ jurisdiction over the subject matter of this Stipulation.

[Signature Pages Follow]

Docusign Envelope ID: EF01B07F-7AA5-4C01-BED2-79109AFF36E4

**IN WITNESS WHEREOF**, each Party has caused this Stipulation to be duly executed and delivered as of the Stipulation Date set forth above.

**WHITEHORSE CAPITAL MANAGEMENT, LLC**

By: ________________________
Name: John Yeager
Title: Managing Director

**CAMARILLO FITNESS HOLDINGS, LLC**

By: ________________________
Name:
Title:

**CAMARILLO FITNESS OPCO, LLC**

By: ________________________
Name:
Title:

**CAMARILLO FITNESS MANAGEMENT, LLC**

By: ________________________
Name:
Title:

**WINSTON & STRAWN LLP**
*Counsel to WhiteHorse Capital Management, LLC, Camarillo Fitness Holdings, LLC, Camarillo Fitness Opco, LLC, Camarillo Fitness Management, LLC and those other parties on Exhibit A*

By: ________________________
Carey D. Schreiber, Esq.
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Email: cschreiber@winston.com

**IN WITNESS WHEREOF**, each Party has caused this Stipulation to be duly executed and delivered as of the Stipulation Date set forth above.

**WHITEHORSE CAPITAL MANAGEMENT, LLC**

By: ________________________
Name:
Title:

**CAMARILLO FITNESS HOLDINGS, LLC**

By: *John Yeager*
Name: John Yeager
Title: Authorized Signatory

**CAMARILLO FITNESS OPCO, LLC**

By: *John Yeager*
Name: John Yeager
Title: Authorized Signatory

**CAMARILLO FITNESS MANAGEMENT, LLC**

By: *John Yeager*
Name: John Yeager
Title: Authorized Signatory

**WINSTON & STRAWN LLP**
*Counsel to WhiteHorse Capital Management, LLC, Camarillo Fitness Holdings, LLC, Camarillo Fitness Opco, LLC, Camarillo Fitness Management, LLC and those other parties on Exhibit A*

By: ________________________
Carey D. Schreiber, Esq.
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Email: cschreiber@winston.com

**IN WITNESS WHEREOF**, each Party has caused this Stipulation to be duly executed and delivered as of the Stipulation Date set forth above.

**WHITEHORSE CAPITAL MANAGEMENT, LLC**

By: ________________________
Name:
Title:

**CAMARILLO FITNESS HOLDINGS, LLC**

By: ________________________
Name:
Title:

**CAMARILLO FITNESS OPCO, LLC**

By: ________________________
Name:
Title:

**CAMARILLO FITNESS MANAGEMENT, LLC**

By: ________________________
Name:
Title:

**WINSTON & STRAWN LLP**
*Counsel to WhiteHorse Capital Management, LLC, Camarillo Fitness Holdings, LLC, Camarillo Fitness Opco, LLC, Camarillo Fitness Management, LLC and those other parties on Exhibit A*

By: ________________________
Carey D. Schreiber, Esq.
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Email: cschreiber@winston.com

**CHAPTER 7 ESTATE OF HONORS HOLDINGS, LLC**

By: *s/ Lori Lapin Jones, Esq., Trustee*
Name: Lori Lapin Jones, Esq.
Title: Chapter 7 Trustee

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Lori Lapin Jones, Esq., as Chapter 7 Trustee*

By: *s/ Holly R. Holecek*
Holly R. Holecek, Esq.
A Partner of the Firm
3305 Jerusalem Avenue, Ste. 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Email: hrh@lhmlawfirm.com

**AGREED AND ACCEPTED with respect to Recital Z, Section B, and paragraphs 29 to 37:**

**AF5 120 INW, LLC**

By: ________________________
Name: Bruce Kassman
Title: Authorized Signatory

**ARENTFOX SCHIFF LLP**
*Counsel to AF5 120 INW, LLC*

By: ________________________
Beth M. Brownstein, Esq.
1301 Avenue of the Americas, 42nd Fl.
New York, New York 10019
Telephone: (212) 484-3900
Email: beth.brownstein@afslaw.com

**CHAPTER 7 ESTATE OF HONORS HOLDINGS, LLC**

By: ____________________________
Name: Lori Lapin Jones, Esq.
Title: Chapter 7 Trustee

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Lori Lapin Jones, Esq., as Chapter 7 Trustee*

By: ____________________________
Holly R. Holecek, Esq.
A Partner of the Firm
3305 Jerusalem Avenue, Ste. 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Email: hrh@lhmlawfirm.com

**AGREED AND ACCEPTED with respect to Recital Z, Section B, and paragraphs 29 to 37:**

**AF5 120 INW, LLC**

By: Bruce Kassman
Name: Bruce Kassman
Title: Authorized Signatory

**ARENTFOX SCHIFF LLP**
*Counsel to AF5 120 INW, LLC*

By: Beth Brownstein
Beth M. Brownstein, Esq.
1301 Avenue of the Americas, 42nd Fl.
New York, New York 10019
Telephone: (212) 484-3900
Email: beth.brownstein@afslaw.com

**AGREED AND ACCEPTED with respect to Recital I, and paragraphs 16, 17 and 29 to 37:**

**NEW MARKET – EAST GATE, LLC**

DocuSigned by:

By: Peter Maggio
Name: Peter Maggio
Title: An Authorized Signatory

**KELLEY DRYE & WARREN LLP**
*Counsel to New Market – East Gate, LLC*

Signed by:

By: Robert L. LeHane

Robert L. LeHane
Jennifer D. Raviele
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: rlehane@kelleydrye.com
jraviele@kelleydrye.com

**AGREED AND ACCEPTED but only with respect to Recital I (to the extent it relates to JM Spartanburg and the Spartanburg Premises), and paragraphs 16, 18-22 and 29 to 37. ERP Hillcrest, LLC is not agreeing to any other provisions of this Agreement as they do not relate to it:**

**ERP HILLCREST, LLC**

By: ________________________
Name: [____]
Title: [____]

**SHUMAKER**
***Counsel to ERP Hillcrest, LLC***

By: ________________________
Name: [____]
Title: [____]

**AGREED AND ACCEPTED with respect to Recital I, and paragraphs 16, 17 and 29 to 37:**

**NEW MARKET – EAST GATE, LLC**

By: ________________________
Name: [____]
Title: [____]

**KELLEY DRYE & WARREN LLP**
*Counsel to New Market – East Gate, LLC*

By: ________________________
Robert L. LeHane
Jennifer D. Raviele
3 World Trade Center
175 Greenwich Street
New York, New York 10007
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: rlehane@kelleydrye.com
jraviele@kelleydrye.com

**AGREED AND ACCEPTED but only with respect to Recital I (to the extent it relates to JM Spartanburg and the Spartanburg Premises), and paragraphs 16, 18-22 and 29 to 37. ERP Hillcrest, LLC is not agreeing to any other provisions of this Agreement as they do not relate to it:**

**ERP HILLCREST, LLC**

DocuSigned by:
By: ________________________
Name: Matthew Ryan
Title: Executive Vice President, President South Region

**SHUMAKER**
***Counsel to ERP Hillcrest, LLC***

By: ________________________
Name: [Ronald Bruckmann]
Title: [Attorney, Shumaker, Loop & Kendrick LL
NC Bar No. 53693

**AGREED AND ACCEPTED solely with respect to paragraph 9:**

**MAGNOZZI LAW FIRM, P.C.**
*Counsel to Oracle America, Inc.*

By: *Mark F. Magnozzi*
Name: Mark Magnozzi
Title: Shareholder

**IT IS SO ORDERED**

Dated: Brooklyn, New York
August 20, 2025

Elizabeth S. Stong
United States Bankruptcy Judge

# <u>EXHIBIT A</u>

Affiliates of Camarillo Fitness Holdings, LLC

An unredacted copy has been provided to the Court

**EXHIBIT B**

Form of Oracle Assignment Agreement

ORACLE

| | | | |
|---|---|---|---|
| **Assignor:** | **Chapter 7 Estate of Honors Holdings, LLC** | **Assignee:** | **Camarillo Fitness Opco, LLC** |
| **Assignor's Location:** | **98 Cutter Mill Road, Suite 255 South, Great Neck, NY 11021** | **Assignee's Location:** | **120 Interstate North Pkwy, Suite 308 Atlanta, GA 30339** |

This Assignment Agreement must be executed by Assignor and Assignee on or before September 30, 2025, to be valid and once so executed shall become effective upon the date of consent and execution by Oracle (as hereinafter defined) below (the "Assignment Effective Date"). The defined terms in this Assignment Agreement shall have the same meaning as in the Agreement (as defined below) unless otherwise specified herein. References to "Your Content" include Customer Data and any non-Oracle software programs that Assignor or Assignor's Users provide and load onto, or create, using the NetSuite Cloud Services (collectively, "Services"). Oracle America, Inc. ("Oracle") is the successor in interest to NetSuite, Inc. ("NetSuite") and any references to NetSuite in the Agreement referenced below shall mean Oracle.

**ASSIGNMENT**

1. Pursuant to an Order of the United States Bankruptcy Court for the Eastern District of New York, Lori Lapin Jones, solely in her capacity as Chapter 7 Trustee of the Estate of Honors Holdings, LLC ("Assignor") was authorized to assume and assign the Subscription Services Agreement v010118 and any amendments or addenda thereto between Oracle and Assignor with an effective date as of 31-May-2018 and all ordering documents governed by the Subscription Services Agreement (collectively, the "Agreement").

2. As of the Assignment Effective Date, Assignor:

   (a) has not sold, assigned or otherwise transferred the Services to another entity;

   (b) will immediately discontinue use of the Services that are assigned under this Assignment Agreement (but Assignor's professionals who were or are authorized by Assignee to use such Services as Users, as defined in the Agreement, may continue to use such Services following the Assignment Effective Date at no additional cost or fees to Assignor or Assignee, provided that such use is authorized under the Agreement). For sake of clarity, the Assignor's professionals are permitted Users whose use is authorized under the Agreement.

3. Pursuant to the terms of this Assignment Agreement and effective on the Assignment Effective Date, Assignor hereby assigns to Assignee all its rights, obligations and interest in and to the Agreement including the acquired Service(s) thereunder, for customer account 5148030.

4. Assignor acknowledges and agrees that:

   (a) as of the Assignment Effective Date: (i) any and all rights and obligations of Assignor for the Services shall terminate. For the avoidance of doubt, the foregoing sentence shall be without prejudice to any provisions in the Agreement that survive termination, except that, notwithstanding anything to the contrary in the Agreement), upon the Assignment Effective Date, Assignor's right to access the Services for retrieving the data residing in the Services terminates and any further access must be agreed with Assignee; and (ii) the then-current Services, including Your Content then residing in such services, shall be made available to Assignee;

   (b) the assignment does not result in any change in Oracle's rights and obligations under the Agreement, or expand, modify or otherwise alter any use or component of the Services and Your Content;

   (c) Oracle will have no liability to Assignor for any actions taken by Assignee, or by Oracle when acting under Assignee's instructions provided in accordance with the Agreement, including without limitation the modification or deletion of Your Content or other materials; and

   (d) all documentation and other materials received from Oracle relating to the Services (if any) will be immediately transferred from Assignor to Assignee and, once transferred to Assignee, Assignor will delete, destroy or render inaccessible any such remaining documentation and other materials including any copies thereof.

**Assignor:** Chapter 7 Estate of **Honors Holdings, LLC**

Signature: ____________________________

Name: ______________________________

Title: ______________________________

Date: ______________________________

**ACCEPTANCE OF ASSIGNMENT**

1. Assignee represents and warrants that as of the Assignment Effective Date, it has obtained from Assignor all rights and consents necessary to access, modify, delete and otherwise control Assignor's Your Content and any other of the Assignor's materials in Oracle's possession.

2. Assignee acknowledges and agrees that:

   (a) Assignee hereby assumes the payment obligations for all invoices issued by Oracle on or after the Assignment Effective Date for the Services;

   (b) the assignment does not result in any change in Oracle's rights and obligations under the Agreement, or expand, modify or otherwise alter any use or component of the Services and Your Content;

   (c) Assignee is responsible for making Oracle aware of any user account changes necessary as a result of the assignment (no additional fees shall apply provided that Assignee does not modify the Agreement after the Assignment Effective Date, in which case, additional fees may apply); and

   (d) Oracle will have no liability to Assignee for any actions taken by Assignor, including without limitation the modification or deletion of Your Content or other materials.

3. Pursuant to the terms of this Assignment Agreement, Assignee hereby accepts the foregoing assignment and agrees to perform all duties and obligations to be performed by Assignor under the Agreement to the same extent as if it had been the original signatory in place of Assignor. Pursuant to the terms of this Assignment Agreement, Assignee hereby accepts the foregoing assignment.

By signing below, signatory further represents and warrants that signatory has the authority to bind the Assignee to the terms of this Assignment Agreement and sign on Assignee's behalf.

**Assignee:** **Camarillo Fitness Opco, LLC**

Signature: ______________________

Name: ______________________

Title: ______________________

Date: ______________________

**CONSENT TO ASSIGNMENT**

Subject to the terms and conditions of this Assignment Agreement and acceptance of assignment, Oracle hereby consents to the foregoing assignment. By signing below, signatory further represents and warrants that signatory has the authority to bind Oracle to the terms of this Assignment Agreement and sign on Oracle's behalf.

**Oracle America, Inc.**

Signature: ___________________________

Name: ______________________________

Title: ______________________________

Date: ______________________________