**WINSTON & STRAWN LLP**
Carey D. Schreiber
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Email: cschreiber@winston.com

Scott Ahmad
35 W. Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Email: sahmad@winston.com

*Counsel to WhiteHorse Capital Management, LLC*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| HONORS HOLDINGS, LLC, | Case No.: 24-44875-ess |
| Debtor. | |

------------------------------------------------------------x

**OBJECTION OF WHITEHORSE CAPITAL MANAGEMENT, LLC TO THE APPLICATION OF CHAPTER 7 TRUSTEE FOR ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 2004 AUTHORIZING EXAMINATION OF WHITEHORSE CAPITAL MANAGEMENT, LLC**

WhiteHorse Capital Management, LLC ("WhiteHorse") hereby files this objection (the "Objection") to the *Application of Chapter 7 Trustee for Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Authorizing Examination of WhiteHorse Capital Management, LLC* (the "Rule 2004 Motion") [Docket No. 83]. In support of the Objection, WhiteHorse submits the *Declaration of Carey D. Schreiber in Support of the Objection of WhiteHorse Capital Management, LLC to the Application of Chapter 7 Trustee for Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Authorizing Examination of WhiteHorse Capital Management, LLC* (the "Schreiber Declaration") filed contemporaneously herewith and hereby states as follows:

## PRELIMINARY STATEMENT

1.      The Rule 2004 Motion is unfortunate and very misleading. Whitehorse does not make that statement lightly. The Trustee failed to disclose that counsel to the above-referenced debtor, Honors Holdings, LLC (the "Debtor" or "Honors Holdings"), WhiteHorse, and Camarillo[1] have collectively already voluntarily provided the Trustee with over 400,000 pages (457 GB data) of emails and documents in multiple discovery productions at the expense of WhiteHorse, including supplements thereto from time to time at the request of the Trustee based on her review of previous productions.

2.      Such voluntary productions to the Trustee began in early March 2025, shortly after the Trustee was appointed and include (i) a voluntary production from Honors Holdings, with the consent of WhiteHorse and Camarillo, of, among other things, its Google Dropbox containing material documents and the email folders of agreed custodians (which records were acquired by Camarillo in the Foreclosure (as defined below) prior to the Petition Date) that included all emails from such custodians to all third parties, including to their counsel (without any assertion of privilege)[2] and emails between such custodians and WhiteHorse, (ii) voluntary productions by WhiteHorse and Camarillo of, among other things, the Foreclosure documents and Credit Documents (as defined in the Credit Agreement) among WhiteHorse and Honors Holdings, (iii) an updated production by WhiteHorse and Camarillo of certain Honors Holdings' email folders to include an expanded timeframe at the Trustee's request, and (iii) six additional productions by WhiteHorse and Camarillo of emails and documents from WhiteHorse and Camarillo custodians agreed to by the Trustee using search terms agreed to by the Trustee, including those modified

---

[1] As used herein, "Camarillo" means, collectively, Camarillo Fitness Holdings, LLC and its subsidiaries, including Camarillo Fitness Management, LLC and Camarillo Fitness Opco, LLC.
[2] In order to expedite the production to the Trustee, WhiteHorse and Camarillo reserved the right to assert such privilege rather than objecting.

from time to time at the request of the Trustee, including the most recent voluntary production in November 2025 (which is the only production mentioned by the Trustee in the Rule 2004 Motion).

3. The Trustee pretextually seeks to "formalize" the production process through the Rule 2004 Motion, but as set forth in greater detail below, the production process has already been completed. While the Trustee implies that there may be additional requests based on the information voluntarily provided, all follow-up requests made by the Trustee to date have been completed. Moreover, the most recent production was in November 2025, approximately three months ago. Notably, the Rule 2004 Motion sets forth nothing specific as being outstanding.

4. Cutting through the hyperbole in the Rule 2004 Motion, all that is really at issue is that WhiteHorse and Camarillo identified and withheld a relatively small percentage of their voluntary production as presumptively privileged and the Trustee would like to review those emails and documents and the Trustee would like to depose a witness. The request to review privileged emails is guised in a request for a privilege log purportedly to enable the Trustee to "assess claims of privilege as contemplated by Rule 26(b)(5) of the Federal Rules of Civil Procedure" ("Rule 26(b)(5)"). However, Rule 26(b)(5), does not require a privilege log of the type requested by the Trustee. Moreover, it is beyond dispute that such a log would, in any event, not show sufficient detail to enable the Trustee to ascertain with necessary specificity what is in any particular email such that the Trustee could request to see it.

5. All Rule 26(b)(5) requires is that the party withholding the information make the claim and describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. WhiteHorse and Camarillo have done so

in communications with the Trustee on multiple occasions, including disclosing exactly among whom the emails were sent/received and confirming that the emails do not include emails that were copied to third parties (to whom privilege would not apply). The methodology has not been disputed by the Trustee. Instead, the Trustee simply insists that time and money be spent to provide an email by email log that will provide no actual value. This is an unduly burdensome, disproportionate, duplicative, time consuming, and expensive process not required by applicable law.

6. To the extent that the Trustee would like to depose a WhiteHorse witness, that can be done voluntarily and the scope can be agreed to voluntarily as has proven to be the case with the document discovery and a Rule 2004 motion is unnecessary. To the extent that it cannot, the Trustee can seek Court relief at such time.

7. In short, the Trustee has not and cannot establish that "good cause" exists for the relief requested and it should thus be denied.

## FACTUAL BACKGROUND

A. The Foreclosure and the Transitions Services Agreement

8. By way of background, on September 25, 2024, Honors Holdings and various of its subsidiaries, WhiteHorse, as Agent[3], and the Lenders for the purpose set forth therein, entered into that certain Partial Strict Foreclosure Agreement (the "PSFA") under Section 9-620 of the New York Uniform Commercial Code. Pursuant to the PSFA, among other things, the equity interests in 137 subsidiaries of Honors Holdings, including 109 subsidiaries that operate

---

[3] As used herein, "Agent" means WhiteHorse Capital Management, LLC, as Agent for the Lenders (in such capacity, together with its successors and permitted assigns, including any assignee formed by the Agent and designated as an assignee for purposes of the PSFA and TSA (each as defined below)) under that certain Credit Agreement, dated as of September 6, 2019 (as same has been and may be further amended, restated, amended and restated, supplemented, extended, or otherwise modified from time to time, the "Credit Agreement").

Orangetheory Fitness ("OTF", "OTF/Purpose Brands", or the "Franchisor") studios, certain other assets of Honors Holdings, including its books and records, and assets of other of Honors Holdings' subsidiaries that were not acquired (the "Excluded Entities"), including, but not limited to, the membership agreements and proceeds therefrom and the books and records of each of the Excluded Entities, if any, and the option to acquire Honors Holdings' equity interests in the Excluded Entities were accepted by WhiteHorse, as Agent, and assigned to Camarillo Fitness Holdings, LLC ("CFH") and Camarillo Fitness Opco, LLC ("CFO") in exchange for the partial satisfaction of $70 million of the more than $114 million in secured obligations owing to WhiteHorse, as Agent, by Honors Holdings (the "Foreclosure"), leaving WhiteHorse, as Agent, owed in excess of $44 million by Honors Holdings.

9. The Debtor scheduled WhiteHorse as a secured creditor with a secured claim of not less than $44,411,461.46. *See* Schedule D [Docket No. 27].

10. On September 25, 2024, Honors Holdings and other Credit Parties (as defined therein) and WhiteHorse, as Agent, also entered into that certain Transition Services Agreement (the "TSA") pursuant to which Honors Holdings agreed to provide certain requested services to Camarillo and facilitate the transfer of personnel, and WhiteHorse, as Agent, through CFH, agreed to, among other things, fund a budget to, among other things, permit Honors Holdings to operate the twenty-two (22) studio subsidiaries that were not acquired by CFH, and to permit personnel employed by CFH or its affiliates to provide services to Honors Holdings and its subsidiaries on the terms set forth therein.

11. On November 8, 2024, WhiteHorse, as Agent, exercised its rights under the PSFA to foreclose on the equity interests of an additional twelve (12) Excluded Entities. As of such date,

Honors Holdings remained the owner of a number of Excluded Entities, including a number that operated Franchisor studios, all of which are member managed by Honors Holdings.

12. Honors Holdings and its affiliates operated a cash management system at JPMorgan Chase ("<u>JPM</u>") which, for administrative convenience, permitted all of their respective bank accounts to be accessed through an account portal at JPM in Honors Holdings' name. Subsequent to the Foreclosure, for administrative convenience, certain accounts of CFH and its affiliates (including accounts owned by entities that had been foreclosed upon) were administered in the same portal (the "<u>Camarillo JPM Bank Accounts</u>").

13. Pursuant to the PSFA, WhiteHorse, as Agent, also foreclosed on the books and records of Honors Holdings and its subsidiaries, which were assigned to a subsidiary of CFH, CFO. Under the TSA, WhiteHorse, as Agent, through its assignee CFO, requested that Honors Holdings continue to permit CFO to use the Oracle Agreement.[4]

**B.      The Chapter 7**

14. On November 20, 2024 (the "<u>Petition Date</u>"), an involuntary Chapter 7 bankruptcy case was commenced against Honors Holdings in the United States Bankruptcy Court for the Eastern District of New York (the "<u>Court</u>").

15. On March 3, 2025, the Order for Relief dated February 27, 2025 [Docket No. 22] was entered against Honors Holdings, on consent.

16. Upon information and belief, from the Petition Date through the date of the entry of the Order for Relief, Honors Holdings continued to operate its business and continued to use,

---

[4] As more fully set forth in *Stipulation and Order Respecting Motion of Whitehorse Capital Management, LLC for an Order Authorizing Relief From the Automatic Stay and Related Issues* [Docket No. 73], the Oracle Agreement is a Subscription Services Agreement for cloud-based services between Debtor and Oracle America, Inc.

acquire, or dispose of property as if an involuntary case concerning Honors Holdings had not been commenced, in accordance with section 303(f) of the Bankruptcy Code.

17. On March 4, 2025, Lori Lapin Jones, Esq. was appointed as interim Chapter 7 Trustee of the Debtor's estate (the "Trustee") [Docket No. 24].

18. On April 7, 2025, the Trustee examined the Debtor at an initial meeting of creditors pursuant to section 341(a) of the Bankruptcy Code.

19. By motion dated April 22, 2025 [Docket No. 38] (the "Stay Relief Motion"), WhiteHorse, as Agent, sought relief from the automatic stay, among other things, to permit WhiteHorse, as Agent, and Camarillo: (i) to terminate the TSA; (ii) to fully administer the Camarillo JPM Bank Accounts; and (iii) to assume the Oracle Agreement.

20. The Trustee stipulated to the Stay Relief Motion requiring, among other things, the payment of $75,000 as set forth in (i) that certain *Stipulation and Order Respecting Motion of Whitehorse Capital Management, LLC for an Order Authorizing Relief From the Automatic Stay and Related Issues* [Docket No. 73] and (ii) that certain *Second Stipulation and Agreed Order Respecting Motion of Whitehorse Capital Management, LLC for an Order Authorizing Relief From the Automatic Stay and Related Issues* [Docket No. 76] (collectively, (i) and (ii), the "Lift Stay Stipulations").

C. **The Substantial and Voluntary Discovery Productions**

21. To date, WhiteHorse and Camarillo have provided the Trustee with over 400,000 pages of documents (including emails) and over 457 GB of data including Google Vault email and Dropbox data. *See* Schreiber Decl. ¶ 12. Shortly after the Trustee's appointment and promptly upon request, in addition to multiple phone calls with the Trustee and her counsel providing background information, WhiteHorse and Camarillo voluntarily produced documents on multiple occasions, including the following:

7

a. 3/5/25 – Georgia State Court litigation documents involving Robert Scot James and the Debtor, including Honors Holdings' Response and Objection to Application for Charging Order, Motion to Intervene; Objection to Application; Order on Defendant's claim of Exemption;

b. 3/11/25 – TSA;

c. 3/11/25 – Headquarters' Lease;

d. 3/11/25 - the following:

   i. documents relating to the appointment of the independent manager and related, as follows:

      a) Notice of Default and Reservation of Rights dated 4/22/24;
      b) Notice of Exercise of Proxy Rights dated 4/22/24;
      c) Manager Resolutions Removing Officers Bank Account Authority dated 4/22/24;
      d) Notice Letter to Credit Parties re Appointment of Independent Manager dated 4/22/24;
      e) Forbearance Agreement dated 5/6/24;

   ii. governing documents for Honors Holdings LLC and its direct parent HH Holdco Inc. and indirect parent JWC Peach Holdings, L.P.:

      a) Second Amended and Restated Limited Liability Company Agreement of Honors Holdings, LLC dated 9/16/19;
      b) Third Amended and Restated Limited Liability Company Agreement of Honors Holdings, LLC dated 4/22/24;
      c) HH Holdco, Inc. Bylaws dated 12/7/17;
      d) Fourth Amended and Restated Limited Partnership Agreement of JWC Peach Holdings, L.P. dated 11/29/21;

   iii. Limited Liability Company Agreement of [JM Aiken LLC] dated [1/14/20];

   iv. Amended and Restated Limited Liability Company Operating Agreement of JM Spartanburg Fitness, LLC dated 9/23/24;

   v. **LIMITED WAIVER AND EIGHTH AMENDMENT TO CREDIT AGREEMENT** dated as of July 11, 2023 (including, as Annex A thereto, a copy of the Credit Agreement, dated as of September 6, 2019, conformed through the Eighth Amendment);

   vi. **NINTH AMENDMENT TO CREDIT AGREEMENT** dated as of June 20, 2024; and

   vii. **HOLDING COMPANY SECURITY AGREEMENT** dated as of September 6, 2019; and

8

  e.  3/12/25 - the final forms of assignment documents for Aiken and Spartanburg, 2 Existing Studios.

*See* Schreiber Decl. ¶ 13.

  22.  On May 1, 2025, the Trustee made what was asserted to be a turnover demand of WhiteHorse pursuant to section 542(e) of the Bankruptcy Code requesting documents related to, inter alia, the loan and foreclosure transaction. WhiteHorse and Camarillo objected to the demand and the applicability of section 542(e) of the Bankruptcy Code given the transfer of ownership of such documents to Camarillo pursuant to the Foreclosure prior to the Petition Date but agreed to voluntarily produce documents subject to a reservation of rights and entry of a protective order. Counsel to Honors Holdings, Willkie Farr & Gallagher ("Willkie"), similarly agreed to provide information to the Trustee voluntarily with the consent of WhiteHorse and Camarillo. *See* Schreiber Decl. ¶ 14. On August 8, 2025, the Court entered that certain agreed *Confidentiality and Protective Order* [Docket No. 68].

  23.  In addition, CFH provided the Trustee's counsel with direct access to Honors Holdings' accounting system. *See* Schreiber Decl. ¶ 15.

  24.  On or about May 7, 2025, upon information and belief, Willkie produced the following to the Trustee:

  a.  Willkie's client files including emails with Honors Holdings, WhiteHorse, Grant Lyon, the Franchisor and others.

  b.  Discovery materials related to the Robert Scot James litigation in Georgia, including document productions made by Latham, a small supplemental production made by Willkie, and certain communications between Honors Holdings and its Georgia counsel related to the depositions and discovery disputes during the prior Fall.

c. The following raw data that was collected from Honors Holdings in January 2025 in connection with discovery around the motion to dismiss the chapter 7 petition:

| Received Date | Data Source | Custodians | Data Size (Received GBs) | Data Size (Extracted GBs) | Date Range |
|---|---|---|---|---|---|
| 1/26/2025 | DropBox (Shared Drive) | Honors Holdings | 167.10 | 161.23 | N/A - 1/26/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Short, Ashley | 8.70 | 13.14 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Landlord Mailbox | 1.12 | 1.74 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Mariani, Vincent | 5.95 | 8.96 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Mehr, Michael | 4.20 | 6.30 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Schueppel, Mirko | 52.44 | 93.02 | 1/1/2019 - 1/28/2025 |

*See* Schreiber Decl. ¶ 16.

25. The Trustee's counsel asked that an additional date range of the Google Vault data be provided (from January 29, 2025 to March 3, 2025). *See* Schreiber Decl. ¶ 17. Accordingly, on August 13, 2025, WhiteHorse and Camarillo made two additional productions. *See id*.

26. Production 1 consisted of a bring down of certain Materials previously produced to the Trustee by Willkie, as follows:

a. the entire Honors Holdings Dropbox Desktop shared drive, including the timeframe for what was previously produced given this was the least expensive and most efficient way to bring down the DropBox; and

b. Google Vault data from January 28, 2025 through March 3, 2025, including the following:

  i. Google Vault Data (including email box) for Michael Mehr;
  ii. Google Vault Data (including email box) for Ashley Short;
  iii. Google Vault Data (including email box) for Mirko Schueppel;

10

iv.        Google Vault Data (including email box) for Landlord Inbox; and

v.        Google Vault Data (including email box) for Vincent Mariani.

*See* Schreiber Decl. ¶ 18. This was approximately 218 GB of data. *See id.*

27.    Production 2 consisted of the following:[5]

a.    Email communications between the WhiteHorse Custodians set forth below and the External Parties listed thereafter for the relevant period of February 2024 through February 2025:

**WhiteHorse Custodians:**

- John Yeager
- David Indelicato
- Mark Bernier
- Vivek Jain
- Stephen Migdal
- Luis Toro
- Joshua Abueva
- Jack Kelly

**External Parties:**

- Kass-Gergi, Yara - YKass-Gergi@willkie.com
- Lennon, Brian - BLennon@willkie.com
- Thomison, Andrew - AThomison@willkie.com
- Burbage, James - JBurbage@willkie.com
- DiSanto, Philip - PDiSanto@willkie.com
- Grant Lyon - glyon@aretecp.com
- Mirko Schueppel - Mirko@honorsholdingsllc.com
- Vincent Mariani - vmariani@honorsholdingsllc.com

b.    The following Materials which WhiteHorse and Camarillo agreed to separately produce for the Trustee's ease of review, even though they may separately appear in Production 1:

i.        bank statements for certain accounts located at JP Morgan Chase Bank, N.A. from 2021 through September 2024, which have been redacted in accordance with, among other things, the *Order Authorizing Chapter 7 Trustee to Issue Document Subpoena to JP Morgan Chase Bank, N.A. Pursuant to Bankruptcy Rule 2004* dated August 8, 2025 [Docket No. 69] entered in the Case;

---

[5] Production 2 was numbered WH_HH_Trustee_0000001 – WH_HH_Trustee_0027852.

11

  ii.  certain valuation Materials; and

  iii.  the closing set for the transaction by and among JWC Peach Holdings, L.P., Honors Holdings, LLC, and Vine Investments XVII, LLC, dated as of April 20, 2021 and related information.

*See* Schreiber Decl. ¶ 19.

28. As a supplement to Production 1, the Trustee requested and WhiteHorse and Camarillo agreed to also produce the Google Vault data for Clayton Putala for the same period (January 1, 2019 through March 3, 2025). *See* Schreiber Decl. ¶ 21.

29. As a supplement to Production 2, the Trustee requested that external communications for the relevant period should include the following additional External Parties: certain former Honors Holdings' employees, including Mirko Schueppel, Vincent Mariani, Michael Mehr, Ashley Short at their Camarillo email addresses; Carl Marks (Carl Landeck, Marc Pfefferle and Stephen Funnel); and OTF/Purpose Brands personnel (Dave Long, Rich Armstrong, Kyle Hatem) and with/through counsel (DLA, Rich Greenstein, Alexander Tuneski, Eric Goldberg). *See* Schreiber Decl. ¶ 22.

30. At the same time, WhiteHorse, Camarillo and the Trustee continued to negotiate search terms for searches of the email accounts of the WhiteHorse Custodians listed above with respect to the Trustee's additional request for all internal emails between the WhiteHorse Custodians. *See* Schreiber Decl. ¶ 23.

31. On September 12, 2025, in response to the Trustee's supplemental requests, WhiteHorse and Camarillo produced Productions 3 and 4. *See* Schreiber Decl. ¶ 24.

32. Production 3 consisted of a supplement to Production 1 at the request of the Trustee, which was the bring down of certain Materials previously produced to the Trustee by Willkie, as follows:

   a. Emails from January 28, 2025 through March 3, 2025 that, upon information and belief, were forwarded and downloaded by Mirko Schueppel to his Microsoft One Drive account as backup; and

   b. Google Vault data (including email box data) from January 28, 2025 through March 3, 2025 for Clayton Putala.

*See* Schreiber Decl. ¶ 25.

33. Production 4 consisted of the following supplemental information at the request of the Trustee:[6]

   a. Email communications between the WhiteHorse/Camarillo Custodians set forth below and all parties at the External Domains listed thereafter for the relevant period of February 2024 through February 2025:

   **WhiteHorse/Camarillo Custodians**:

   • John Yeager
   • David Indelicato
   • Mark Bernier
   • Vivek Jain
   • Stephen Migdal
   • Luis Toro
   • Joshua Abueva
   • Jack Kelly
   • Vincent Mariani - vmariani@camfit.com
   • Mirko Schueppel - mirko@camfit.com
   • Ashley Short - agraham@camfit.com
   • Michael Mehr - mmehr@camfit.com

   **External Domains**:

   • @orangetheory.com
   • @purposebrands.com
   • @sebrands.com

---

[6] Production 4 was numbered WH_HH_Trustee_0027853 – WH_HH_Trustee_0029421.

      b.      The following Materials which were separately produced to the Trustee in response to her additional requests, even though they may separately appear in one of the other Productions:

           i.      that certain Assignment, dated as of June 4, 2024, by and among Webster Bank, National Association, as Assignor, and the financial institutions set forth on Schedule I thereto, each as an Assignee; and

           ii.      that certain Ninth Amendment to Credit Agreement, dated as of June 20, 2024, by and among Honors Holdings, LLC, as Borrower, HH Holdco, Inc., as Holdings, the other persons party thereto designated as a "Credit Party" on the signature pages thereof, WhiteHorse Capital Management, LLC, as Agent and Lender, and the other Lenders party thereto.

*See* Schreiber Decl. ¶ 26.

34.      On October 16, 2025, WhiteHorse and Camarillo produced Production 5 which consisted of email communications between the WhiteHorse/Camarillo Custodians and external domain @orangetheoryfitness.com.[7] *See* Schreiber Decl. ¶ 28.

35.      WhiteHorse, Camarillo, and the Trustee continued to negotiate search terms for the Whitehorse Custodian email accounts and WhiteHorse and Camarillo continued to be responsive to follow up questions from the Trustee regarding the Productions and to produce agreed responsive materials in future productions while also balancing the need to keep their costs reasonably proportional to the needs of the case. To that end, WhiteHorse/Camarillo Custodians provided three different dates using the agreed search terms to illustrate the volume of materials and in an attempt to narrow the items to be reviewed and produced: September 25, 2024 (the date of the foreclosure and entry into the term sheet with OTF); November 8, 2024 (the date of the option exercise and foreclosure of twelve additional Honors Holdings entities); and January 13, 2025 (the date of entry into the MRA). *See* Schreiber Decl. ¶ 30. Understandably, email traffic and documentation increased after the Foreclosure given, among other things, the need to attend

---

[7] Production 5 was numbered WH_HH_Trustee_0029439 – WH_HH_Trustee_0067607.

to operational issues and all things attendant to ownership. However, the Trustee refused to agree to narrow the dates of the production. *See id.*

36. Accordingly, even though the review and production were, as a result of the Trustee's unwillingness to agree to narrow the dates of the production, more expensive, in their continued efforts to be accommodating to the Trustee, on November 14, 2025, WhiteHorse and Camarillo produced Production 6 that consisted of an additional 47,428 emails and documents, comprised of communications responsive to the agreed search terms and date range insisted upon by the Trustee.[8] *See* Schreiber Decl. ¶ 31.

37. In accordance with Rule 26(b)(5), WhiteHorse and Camarillo disclosed that they were withholding from production 14,919 emails and documents that were potentially privileged material that includes emails and documents exchanged with legal and related professionals engaged by WhiteHorse, HIG and Camarillo and communications with respect thereto. *See* Schreiber Decl. ¶ 33.

38. In addition to confirming that emails from WhiteHorse and Camarillo to third parties on which WhiteHorse and Camarillo professionals had been copied were produced to the Trustee, based upon the understanding that the Trustee was willing to accept a categorical privilege log rather than document by document privilege log, WhiteHorse and Camarillo confirmed on two occasions the following:

    a. on January 15, 2026, (i) that presumptively privileged material refers to material that was excluded from production which includes 8,680 emails and 6,239 email family documents that were exchanged only among legal and related professionals engaged by the WhiteHorse, HIG, and the Camarillo entities (*i.e.*, excluding emails and email family documents that included third parties, which were produced) and internal communications with respect thereto, and (ii) that this was effectuated by searching the names of the individual professionals, their email addresses, the names of

---

[8] As noted above, this is the only production that the Trustee mentions in the Rule 2004 Motion. Production 6 was numbered WH_HH_Trustee_0067608 – WH_HH_Trustee_0409991.

    their firms and the professional firms' email domains and withholding those from the production (again, only to the extent that such emails and email family documents did not include third parties in which case they were not withheld); and

  b. on January 27, 2026, (i) emails and email family documents where third parties were senders or recipients (even if they included presumptively privileged professional firms and WhiteHorse/Camarillo Custodians) were not withheld on presumptively privileged grounds, and (ii) to the extent helpful to further clarify for the Trustee's records, the following list of the presumptively privileged professional firms was shared: Winston & Strawn LLP; Dady & Gardner, P.A.; Akerman LLP; Proskauer Rose LLP; Wargo French Singer; Grant Thorton LLP; and RSM US LLP.

*See* Schreiber Decl. ¶ 34.

## Argument

**A. The Trustee Cannot Demonstrate that Good "Cause" Exists**

39. "The party seeking to conduct a 2004 examination has the burden of showing good cause for the examination which it seeks." *In re Millennium Lab Holdings II, LLC*, 562 B.R. 614 at 627 (Bankr. D. Del. 2016) (citations omitted). Good cause can be demonstrated "if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice." *In re Metiom, Inc.*, 318 B.R. 263, 268 (S.D.N.Y. 2004). Courts apply a balancing test in which the parties' competing interests are weighed against one another, including the relevance and necessity of the information sought and the potential intrusiveness involved in disclosure. *See In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *In re Countrywide Home Loans*, 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) ("[T]he level of good cause required to be established . . . in a Rule 2004 examination involving a creditor will vary depending on the potential intrusiveness involved."); *see also In re Fearn,* 96 B.R. 135, 138 (Bankr. S.D.Ohio 1989) (scope of Rule 2004 examination should not be so broad as to be more disruptive and costly to the party to be examined than beneficial to the party seeking discovery).

40. Rule 2004 is not a blank check. Courts have universally held that "there are important limits to the scope of an examination taken pursuant to Rule 2004." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373 (Bankr. E.D. Pa. 1988)). Courts therefore exercise discretion to determine if discovery under Rule 2004 is appropriate. *See, e.g.*, Fed. R. Bankr. P. 2004(a) ("[T]he court *may* order the examination of any entity") (emphasis added); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (noting that by the permissive language of Rule 2004, the court has discretion when it comes to granting a request for examination thereunder).

41. Accordingly, the "permissive, conditional language" of Rule 2004 (*i.e.*, "may" order) works to "restrict discovery that appears unduly intrusive or burdensome," *In re Roman Catholic Church of Diocese of Gallup*, 513 B.R. 761, 766 (Bankr. D.N.M. 2014), and to "limit, condition or even forbid the use of Rule 2004" to prevent abuse or harassment. *Martin v. Schaap Moving Systems*, 152 F.3d 919, 1998 WL 405966 (2d Cir. April 20, 1998).

42. The Court has ample authority and clear discretion to deny the Rule 2004 Motion because the Trustee fails to carry her burden to show that "good cause" exists for the relief requested. As a preliminary matter, the Trustee's request for a privilege log is far more burdensome and costly to WhiteHorse than would be beneficial or relevant to the Trustee's investigation. Rule 26(b)(5) provides as follows:

**(5) Claiming Privilege or Protection Trial-Preparation Materials.**

**(A) Information Withheld.** When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:

(i) expressly make the claim; and

        (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Fed. R. Civ. P. 26.

43. In short, all Rule 26(b)(5) requires is that the party withholding the information make the claim and describe the nature of what was not produced or disclosed in a manner that, without revealing privileged or protected information, will enable other parties to assess the claim. WhiteHorse, and Camarillo have done so on multiple occasions. As noted above, the Trustee was advised on multiple occasions that the presumptively privileged material that was not produced refers to material that was excluded from production including emails and email family documents that were exchanged only among legal and related professionals engaged by the WhiteHorse, HIG, and Camarillo entities (Winston & Strawn LLP; Dady & Gardner, P.A.; Akerman LLP; Proskauer Rose LLP; Wargo French Singer; Grant Thorton LLP; and RSM US LLP) and internal communications with respect thereto. The Trustee was also advised that this material was identified by searching the names of the individual professionals, their email addresses, the names of their firms and the professional firms' email domains and withholding those from the production (only to the extent that such emails and email family documents did not include third parties in which case they were not withheld). *See* Schreiber Decl. ¶ 34.

44. The Trustee does not discuss such methodology in the Rule 2004 Motion. This methodology clearly satisfies Rule 26(b)(5) as it is sufficient for the Trustee "to assess the asserted privilege." The methodology has not been disputed by the Trustee. Moreover, it would be unduly burdensome for WhiteHorse and Camarillo to produce the requested privilege log because it would serve no objective purpose. Accordingly, the Trustee fails to demonstrate that any information above and beyond what the Trustee has already been provided is required by Rule 26(b)(5).

45. With respect to the request by the Trustee to depose a corporate representative of WhiteHorse, WhiteHorse respectfully notes that it and Camarillo have voluntarily produced discovery to date and will continue to cooperate with the Trustee in setting up a deposition at a mutually agreeable time and place. Negotiating and engaging in Rule 2004 litigation serves no constructive purpose and is a waste of judicial resources when matters can be resolved consensually. Accordingly, the Rule 2004 Motion should be denied.

## RESERVATION OF RIGHTS

46. WhiteHorse and Camarillo reserve all rights with respect to any discovery request served in this chapter 7 case, including without limitation, the right to object on grounds of overbreadth, burden, and relevance, or to assert any applicable claim of privilege. Moreover, to the extent that the Trustee attempts to remedy her failure in the Rule 2004 Motion to articulate proper bases for the relief requested, WhiteHorse and Camarillo reserve all rights to supplement this objection or to reply to any such additional arguments.

## CONCLUSION

47. For the reasons set forth herein, WhiteHorse and Camarillo respectfully request that the Court deny the Rule 2004 Motion and grant such other relief as the Court may deem just and appropriate.

Dated: March 9, 2026
      New York, New York

**WINSTON & STRAWN LLP**

By: _/s/ Carey D. Schreiber_
Carey D. Schreiber
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Email: cschreiber@winston.com

Scott Ahmad
35 W. Wacker Dr.
Chicago, Illinois 60601
Telephone: (312) 558-5600
Email:  sahmad@winston.com

*Counsel to WhiteHorse Capital Management, LLC*