UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re:                                                    Chapter 7

HONORS HOLDINGS, LLC,                                     Case No.: 24-44875-ess

                Debtor.

---------------------------------------------------------x

**DECLARATION OF CAREY D. SCHREIBER
IN SUPPORT OF THE OBJECTION TO THE APPLICATION OF CHAPTER 7
TRUSTEE FOR ORDER PURSUANT TO FEDERAL RULE OF
BANKRUPTCY PROCEDURE 2004 AUTHORIZING
EXAMINATION OF WHITEHORSE CAPITAL MANAGEMENT, LLC**

I, Carey D. Schreiber, state the following under penalty of perjury:

1.      I am a partner with the law firm of Winston & Strawn LLP, attorneys for WhiteHorse Capital Management, LLC ("WhiteHorse"). I make this declaration (this "Declaration") in support of the *Objection of WhiteHorse Capital Management, LLC to the Application of Chapter 7 Trustee for Order Pursuant to Federal Rule of Bankruptcy Procedure 2004 Authorizing Examination of WhiteHorse Capital Management, LLC*, filed concurrently herewith (the "Objection").

2.      The statements in this Declaration are, except where specifically noted, based on my personal knowledge or opinion and on information that I have received from WhiteHorse and Camarillo,[1] counsel to the Chapter 7 Trustee (the "Trustee"), or the Trustee. If I were called upon to testify, I could and would testify competently to the facts set forth herein. I am over the age of 18 years and authorized to submit this Declaration on behalf of WhiteHorse.

---

[1] As used herein, "Camarillo" means, collectively, Camarillo Fitness Holdings, LLC and its subsidiaries, including Camarillo Fitness Management, LLC and Camarillo Fitness Opco, LLC.

3.     WhiteHorse serves as Agent for the Lenders (in such capacity, together with its successors and permitted assigns, including any assignee formed by the agent and designated as an assignee for purposes of the PSFA and TSA (each as defined below), the "Agent") under that certain Credit Agreement dated as of September 6, 2019 (as same has been and may be further amended, restated, amended and restated, supplemented, extended, or otherwise modified from time to time, the "Credit Agreement").

4.     On September 25, 2024, Honors Holdings and various of its subsidiaries, WhiteHorse, as Agent, and the Lenders for the purpose set forth therein, entered into that certain Partial Strict Foreclosure Agreement (the "PSFA") under Section 9-620 of the New York Uniform Commercial Code.  Pursuant to the PSFA, among other things, the equity interests in 137 subsidiaries of Honors Holdings, including 109 subsidiaries that operate Orangetheory Fitness ("OTF", "OTF/Purpose Brands", or the "Franchisor") studios, certain other assets of Honors Holdings, including its books and records, and assets of other of Honors Holdings' subsidiaries that were not acquired (the "Excluded Entities"), including, but not limited to, the membership agreements and proceeds therefrom and the books and records of each of the Excluded Entities, if any, and the option to acquire Honors Holdings' equity interests in the Excluded Entities were accepted by WhiteHorse, as Agent, and assigned to Camarillo Fitness Holdings, LLC ("CFH") and Camarillo Fitness Opco, LLC ("CFO") in exchange for the partial satisfaction of $70 million of the more than $114 million in secured obligations owing to WhiteHorse, as Agent, by Honors Holdings (the "Foreclosure"), leaving WhiteHorse, as Agent, owed in excess of $44 million by Honors Holdings.

5.      On September 25, 2024, Honors Holdings and other Credit Parties (as defined in the TSA) and WhiteHorse, as Agent, also entered into that certain Transition Services Agreement (the "TSA") pursuant to which Honors Holdings agreed to provide certain requested services to Camarillo and facilitate the transfer of personnel, and WhiteHorse, as Agent, through CFH, agreed to, among other things, fund a budget to, among other things, permit Honors Holdings to operate the twenty-two (22) studio subsidiaries that were not acquired by CFH, and to permit personnel employed by CFH or its affiliates to provide services to Honors Holdings and its subsidiaries on the terms set forth therein.

6.      On November 8, 2024, WhiteHorse, as Agent, exercised its rights under the PSFA to foreclose on the equity interests of an additional twelve (12) Excluded Entities.  As of such date, Honors Holdings remained the owner of a number of Excluded Entities, including a number that operated Franchisor studios, all of which are member managed by Honors Holdings.

7.      Honors Holdings and its affiliates operated a cash management system at JPMorgan Chase ("JPM") which, for administrative convenience, permitted all of their respective bank accounts to be accessed through an account portal at JPM in Honors Holdings' name.  Subsequent to the Foreclosure, for administrative convenience, certain accounts of CFH and its affiliates (including accounts owned by entities that had been foreclosed upon) were administered in the same portal (the "Camarillo JPM Bank Accounts").

8.      Pursuant to the PSFA, WhiteHorse, as Agent, also foreclosed on the books and records of Honors Holdings and its subsidiaries, which were assigned to a subsidiary of CFH,

CFO.  Under the TSA, WhiteHorse, as Agent, through its assignee CFO, requested that Honors Holdings continue to permit CFO to use the Oracle Agreement.[2]

9.      Upon information and belief, from November 20, 2024 (i.e., the Petition Date) through March 3, 2025 (i.e., the date of the entry of the Order for Relief), Honors Holdings continued to operate its business and continued to use, acquire, or dispose of property as if an involuntary case concerning Honors Holdings had not been commenced, in accordance with section 303(f) of the Bankruptcy Code.

10.      By motion dated April 22, 2025 [Docket No. 38] (the "Stay Relief Motion"), WhiteHorse, as Agent, sought relief from the automatic stay, among other things, to permit WhiteHorse, as Agent, and Camarillo: (i) to terminate the TSA; (ii) to fully administer the Camarillo JPM Bank Accounts; and (iii) to assume the Oracle Agreement.

11.      The Trustee stipulated to the Stay Relief Motion requiring, among other things, the payment of $75,000 as set for in (i) that certain *Stipulation and Order Respecting Motion of WhiteHorse Capital Management, LLC for an Order Authorizing Relief From the Automatic Stay and Related Issues* [Docket No. 73] and (ii) that certain *Second Stipulation and Agreed Order Respecting Motion of WhiteHorse Capital Management, LLC for an Order Authorizing Relief From the Automatic Stay and Related Issues* [Docket No. 76] (collectively, (i) and (ii), the "Lift Stay Stipulations").

12.      To date, WhiteHorse and Camarillo have provided the Trustee with over 400,000 pages of documents (including emails) and over 457 GB of data including Google Vault email and Dropbox data.

---

[2] As more fully set forth in *Stipulation and Order Respecting Motion of WhiteHorse Capital Management, LLC for an Order Authorizing Relief From the Automatic Stay and Related Issues* [Docket No. 73], the Oracle Agreement is a Subscription Services Agreement for cloud-based services between Debtor and Oracle America, Inc.

Block DocID

13.     Shortly after the Trustee's appointment and promptly upon request, in addition to multiple phone calls with the Trustee and her counsel and myself providing background information, on behalf of WhiteHorse and Camarillo, I voluntarily produced documents on multiple occasions, including the following:[3]

a.    3/5/25 – Georgia State Court litigation documents involving Robert Scot James and the Debtor, including Honors Holdings' Response and Objection to Application for Charging Order, Motion to Intervene; Objection to Application; Order on Defendant's claim of Exemption;

b.    3/11/25 – TSA;

c.    3/11/25 – Headquarters' Lease;

d.    3/11/25 - the following:

    i.    documents relating to the appointment of the independent manager and related, as follows:

        a)    Notice of Default and Reservation of Rights dated 4/22/24;
        b)    Notice of Exercise of Proxy Rights dated 4/22/24;
        c)    Manager Resolutions Removing Officers Bank Account Authority dated 4/22/24;
        d)    Notice Letter to Credit Parties re Appointment of Independent Manager dated 4/22/24;
        e)    Forbearance Agreement dated 5/6/24;

    ii.    governing documents for Honors Holdings LLC and its direct parent HH Holdco Inc. and indirect parent JWC Peach Holdings, L.P.:

        a)    Second Amended and Restated Limited Liability Company Agreement of Honors Holdings, LLC dated 9/16/19;
        b)    Third Amended and Restated Limited Liability Company Agreement of Honors Holdings, LLC dated 4/22/24;
        c)    HH Holdco, Inc. Bylaws dated 12/7/17;
        d)    Fourth Amended and Restated Limited Partnership Agreement of JWC Peach Holdings, L.P. dated 11/29/21;

    iii.    Limited Liability Company Agreement of [JM Aiken LLC] dated [1/14/20];

---

[3] For purposes of the Objection and this Declaration, I have only listed in this paragraph the dates and descriptions of each production made to the Trustee as set forth herein, all of which were done via email. Upon request from the Court, we can provide the email communications and the underlying documents produced, as necessary.

<blockquote>

iv.      Amended and Restated Limited Liability Company Operating Agreement of JM Spartanburg Fitness, LLC dated 9/23/24;

v.      **LIMITED WAIVER AND EIGHTH AMENDMENT TO CREDIT AGREEMENT** dated as of July 11, 2023 (including, as Annex A thereto, a copy of the Credit Agreement, dated as of September 6, 2019, conformed through the Eighth Amendment);

vi.      **NINTH AMENDMENT TO CREDIT AGREEMENT** dated as of June 20, 2024; and

vii.      **HOLDING COMPANY SECURITY AGREEMENT** dated as of September 6, 2019; and

</blockquote>

e.      3/12/25 - the final forms of assignment documents for Aiken and Spartanburg, 2 Existing Studios.

14.      On May 1, 2025, the Trustee made what was asserted to be a turnover demand of WhiteHorse pursuant to section 542(e) of the Bankruptcy Code requesting documents related to, inter alia, the loan and foreclosure transaction. WhiteHorse and Camarillo objected to the demand and the applicability of section 542(e) of the Bankruptcy Code given the transfer of ownership of such documents to Camarillo pursuant to the Foreclosure prior to the Petition Date but agreed to voluntarily produce documents subject to a reservation of rights and entry of a protective order. Counsel to Honors Holdings, Willkie Farr & Gallagher ("Willkie"), similarly agreed to provide information to the Trustee voluntarily with the consent of WhiteHorse and Camarillo.

15.      In addition, CFH provided the Trustee's counsel with direct access to Honors Holdings' accounting system.

16.      On or about May 7, 2025, upon information and belief, Willkie produced the following to the Trustee:

a.      Willkie's client files including emails with Honors Holdings, WhiteHorse, Grant Lyon, the Franchisor and others.

b.      Discovery materials related to the Robert Scot James litigation in Georgia, including document productions made by Latham, a small supplemental production made by Willkie, and certain communications between Honors Holdings and its

Georgia counsel related to the depositions and discovery disputes during the prior Fall.

c.     The following raw data that was collected from Honors Holdings in January 2025 in connection with discovery around the motion to dismiss the chapter 7 petition:

| Received Date | Data Source | Custodians | Data Size (Received GBs) | Data Size (Extracted GBs) | Date Range |
|---|---|---|---|---|---|
| 1/26/2025 | DropBox (Shared Drive) | Honors Holdings | 167.10 | 161.23 | N/A - 1/26/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Short, Ashley | 8.70 | 13.14 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Landlord Mailbox | 1.12 | 1.74 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Mariani, Vincent | 5.95 | 8.96 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Mehr, Michael | 4.20 | 6.30 | 1/1/2019 - 1/28/2025 |
| 1/28/2025 | Google Vault Data (Including Email Box) | Schueppel, Mirko | 52.44 | 93.02 | 1/1/2019 - 1/28/2025 |

17.     The Trustee's counsel asked that an additional date range of the Google Vault data be provided (from January 29, 2025 to March 3, 2025) and in response, WhiteHorse and Camarillo made two additional productions.

18.     Production 1 consisted of a bring down of certain materials previously produced to the Trustee by Willkie, as follows:

a.     the entire Honors Holdings Dropbox Desktop shared drive, including the timeframe for what was previously produced given this was the least expensive and most efficient way to bring down the DropBox; and

b.     Google Vault data from January 28, 2025 through March 3, 2025, including the following:

i.     Google Vault Data (including email box) for Michael Mehr;
ii.     Google Vault Data (including email box) for Ashley Short;

<ol type="i" start="3">
<li>Google Vault Data (including email box) for Mirko Schueppel;</li>
<li>Google Vault Data (including email box) for Landlord Inbox; and</li>
<li>Google Vault Data (including email box) for Vincent Mariani.</li>
</ol>

This was approximately 218 GB of data.

19. Production 2, consisted of the following:[4]

a. Email communications between the WhiteHorse Custodians set forth below and the External Parties listed thereafter for the relevant period of February 2024 through February 2025:

**WhiteHorse Custodians:**

- John Yeager
- David Indelicato
- Mark Bernier
- Vivek Jain
- Stephen Migdal
- Luis Toro
- Joshua Abueva
- Jack Kelly

**External Parties:**

- Kass-Gergi, Yara - YKass-Gergi@willkie.com
- Lennon, Brian - BLennon@willkie.com
- Thomison, Andrew - AThomison@willkie.com
- Burbage, James - JBurbage@willkie.com
- DiSanto, Philip - PDiSanto@willkie.com
- Grant Lyon - glyon@aretecp.com
- Mirko Schueppel - Mirko@honorsholdingsllc.com
- Vincent Mariani - vmariani@honorsholdingsllc.com

b. The following Materials which WhiteHorse and Camarillo agreed to separately produce for the Trustee's ease of review, even though they may separately appear in Production 1:

i. bank statements for certain accounts located at JP Morgan Chase Bank, N.A. from 2021 through September 2024, which have been redacted in accordance with, among other things, the *Order Authorizing Chapter 7 Trustee to Issue Document Subpoena to JP Morgan Chase Bank, N.A. Pursuant to Bankruptcy Rule 2004* dated August 8, 2025 [Docket No. 69] entered in the Case;

---

[4] Production 2 was numbered WH_HH_Trustee_0000001 – WH_HH_Trustee_0027852.

ii.     certain valuation Materials; and

iii.    the closing set for the transaction by and among JWC Peach Holdings, L.P., Honors Holdings, LLC, and Vine Investments XVII, LLC, dated as of April 20, 2021 and related information.

20.     Annexed hereto as **<u>Exhibit 1</u>** is a true and correct copy of the Production Letter related to Productions 1 and 2 that was sent on behalf of WhiteHorse and Camarillo to the Trustee's counsel on August 13, 2025.[5]

21.     As a supplement to Production 1, the Trustee requested and WhiteHorse and Camarillo agreed to also produce the Google Vault data for Clayton Putala for the same period (January 1, 2019 through March 3, 2025).

22.     As a supplement to Production 2, the Trustee requested that external communications for the relevant period should include the following additional External Parties: certain former Honors Holdings' employees, including Mirko Schueppel, Vincent Mariani, Michael Mehr, Ashley Short at their Camarillo email addresses; Carl Marks (Carl Landeck, Marc Pfefferle and Stephen Funnel); and OTF/Purpose Brands personnel (Dave Long, Rich Armstrong, Kyle Hatem) and with/through counsel (DLA, Rich Greenstein, Alexander Tuneski, Eric Goldberg).

23.     At the same time, WhiteHorse, Camarillo and the Trustee continued to negotiate search terms for searches of the email accounts of the WhiteHorse Custodians listed above with respect to the Trustee's additional request for all internal emails between the WhiteHorse Custodians.

---

[5] For purposes of the Objection and this Declaration, I have only attached the various production letters related to each production made to the Trustee as set forth herein. Upon request from the Court, we can provide the email communications and the underlying documents and data produced, as necessary.

24.    On September 12, 2025, in response to the Trustee's supplemental requests, WhiteHorse and Camarillo produced Productions 3 and 4.

25.    Production 3 consisted of a supplement to Production 1 at the request of the Trustee, which was the bring down of certain Materials previously produced to the Trustee by Willkie, as follows:

a.    Emails from January 28, 2025 through March 3, 2025 that, upon information and belief, were forwarded and downloaded by Mirko Schueppel to his Microsoft One Drive account as backup; and

b.    Google Vault data (including email box data) from January 28, 2025 through March 3, 2025 for Clayton Putala.

26.    Production 4 consisted of the following supplemental information at the request of the Trustee:[6]

a.    Email communications between the WhiteHorse/Camarillo Custodians set forth below and all parties at the External Domains listed thereafter for the relevant period of February 2024 through February 2025:

**WhiteHorse/Camarillo Custodians**:

• John Yeager
• David Indelicato
• Mark Bernier
• Vivek Jain
• Stephen Migdal
• Luis Toro
• Joshua Abueva
• Jack Kelly
• Vincent Mariani - vmariani@camfit.com
• Mirko Schueppel - mirko@camfit.com
• Ashley Short - agraham@camfit.com
• Michael Mehr - mmehr@camfit.com

---

[6] Production 4 was numbered WH_HH_Trustee_0027853 – WH_HH_Trustee_0029421.

**External Domains**:

- @orangetheory.com
- @purposebrands.com
- @sebrands.com

b.  The following Materials which were separately produced to the Trustee in response to her additional requests, even though they may separately appear in one of the other Productions:

   i.  that certain Assignment, dated as of June 4, 2024, by and among Webster Bank, National Association, as Assignor, and the financial institutions set forth on Schedule I thereto, each as an Assignee; and

   ii.  that certain Ninth Amendment to Credit Agreement, dated as of June 20, 2024, by and among Honors Holdings, LLC, as Borrower, HH Holdco, Inc., as Holdings, the other persons party thereto designated as a "Credit Party" on the signature pages thereof, WhiteHorse Capital Management, LLC, as Agent and Lender, and the other Lenders party thereto.

27.  Annexed hereto as **<u>Exhibit 2</u>** is a true and correct copy of the Production Letter related to Productions 3 and 4 that was sent on behalf of WhiteHorse and Camarillo to the Trustee's counsel on September 12, 2025.

28.  On October 16, 2025, WhiteHorse and Camarillo produced Production 5 which consisted of email communications between the WhiteHorse/Camarillo Custodians and external domain @orangetheoryfitness.com.[7]

29.  Annexed hereto as **<u>Exhibit 3</u>** is a true and correct copy of the Production Letter related to Production 5 that was sent on behalf of WhiteHorse and Camarillo to the Trustee's counsel on October 16, 2025.

30.  WhiteHorse, Camarillo, and the Trustee continued to negotiate search terms for the Whitehorse Custodian email accounts and WhiteHorse and Camarillo continued to be responsive to follow up questions from the Trustee regarding the Productions and to produce agreed

---

[7] Production 5 was numbered WH_HH_Trustee_0029439 – WH_HH_Trustee_0067607.

responsive materials in future productions while also balancing the need to keep their costs reasonably proportional to the needs of the case. To that end, WhiteHorse/Camarillo Custodians provided three different dates using the agreed search terms to illustrate the volume of materials and in an attempt to narrow the items to be reviewed and produced: September 25, 2024 (the date of the Foreclosure and entry into the term sheet with OTF); November 8, 2024 (the date of the option exercise and foreclosure of twelve additional Honors Holdings entities); and January 13, 2025 (the date of entry into the MRA). Understandably, email traffic and documentation increased after the Foreclosure, email traffic and documentation increased based on, among other things, the need to attend to operational issues and other items attendant to ownership. However, the Trustee refused to agree to narrow the dates of the production based on the foregoing.

31. Accordingly, even though the review and production were, as a result of the Trustee's unwillingness to agree to narrow the dates of the production, more expensive, in their continued efforts to be accommodating to the Trustee, on November 14, 2025, WhiteHorse and Camarillo produced Production 6 that consisted of an additional 47,428 emails and documents, comprised of communications responsive to the agreed search terms and date range insisted upon by the Trustee.[8]

32. Annexed hereto as **<u>Exhibit 4</u>** is a true and correct copy of the Production Letter related to Production 6 that was sent on behalf of WhiteHorse and Camarillo to the Trustee's counsel on November 14, 2025.

---

[8] Production 6 was numbered WH_HH_Trustee_0067608 – WH_HH_Trustee_0409991.

33.    In accordance with Rule 26(b)(5), WhiteHorse and Camarillo disclosed that they were withholding from production 14,919 emails and documents that were potentially privileged material that includes emails and documents exchanged with legal and related professionals engaged by WhiteHorse, HIG and Camarillo and communications with respect thereto.

34.    In addition to confirming that emails from WhiteHorse and Camarillo to third parties on which WhiteHorse and Camarillo professionals had been copied were produced to the Trustee, based upon the understanding that the Trustee was willing to accept a categorical privilege log rather than document by document privilege log, WhiteHorse and Camarillo confirmed on two occasions the following:

   a.    on January 15, 2026, (i) that presumptively privileged material refers to material that was excluded from production which includes 8,680 emails and 6,239 email family documents that were exchanged only among legal and related professionals engaged by the WhiteHorse, HIG, and the Camarillo entities (*i.e.*, excluding emails and email family documents that included third parties, which were produced) and internal communications with respect thereto, and (ii) that this was effectuated by searching the names of the individual professionals, their email addresses, the names of their firms and the professional firms' email domains and withholding those from the production (again, only to the extent that such emails and email family documents did not include third parties in which case they were not withheld); and

   b.    on January 27, 2026, (i) emails and email family documents where third parties were senders or recipients (even if they included presumptively privileged professional firms and WhiteHorse/Camarillo Custodians) were not withheld on presumptively privileged grounds, and (ii) to the extent helpful to further clarify for the Trustee's records, the following list of the presumptively privileged professional firms was shared:  Winston & Strawn LLP; Dady & Gardner, P.A.; Akerman LLP; Proskauer Rose LLP; Wargo French Singer; Grant Thorton LLP; and RSM US LLP.

Block DocID

35.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  March 9, 2026
        New York, New York

By:   _Carey D. Schreiber_
      Carey D. Schreiber
      **WINSTON & STRAWN LLP**
      200 Park Avenue
      New York, New York 10166-4193
      Telephone: (212) 294-6700
      Email: cschreiber@winston.com

Block DocID