Avery Samet, Esq.
Jeffrey Chubak, Esq.
Yosef Trachtenberg, Esq.
Amini LLC
131 West 35th Street
12th Floor
New York, NY 10001
(212) 490-4700
asamet@aminillc.com
jchubak@aminillc.com
ytrachtenberg@aminillc.com
Special Litigation Counsel for Lori Lapin
Jones, Esq. as Chapter 7 Trustee

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| HONORS HOLDINGS, LLC, | Case 24-44875 (ess) |
| Debtor. | |

**CHAPTER 7 TRUSTEE'S MOTION TO ENFORCE THE AUTOMATIC STAY**
**AGAINST ROBERT SCOT JAMES AND CORE2000, LLC**

Lori Lapin Jones, Esq., solely in her capacity as Chapter 7 Trustee ("Trustee") of Honors

Holdings, LLC ("Debtor"), by her Special Litigation Counsel, hereby moves for entry of an order

providing that the commencement and prosecution of the Florida Action (defined below) by Robert

Scot James ("James") and Core2000, LLC ("Core2000," and, together with James, "Respondents")

violates the automatic stay pursuant to 11 U.S.C. § 362(a)(3), and states:

**INTRODUCTION**

1.      Respondents are plaintiffs in a Florida state court action entitled Robert Scot James

et al. v. WhiteHorse Capital Management LLC et al., pending in the Circuit Court of the 11th

Judicial Circuit in and for Miami-Dade County (Case 2025-011769-CA-01) ("Florida Action")

(second amended complaint attached as Exhibit 1, the "Florida Complaint").

1

2.      Although Respondents style the claims in the Florida Action in a number of ways, the claims are all premised on the same core allegations: WhiteHorse Capital Management, LLC ("WhiteHorse") exercised control over the Debtor and its prepetition manager Grant Lyon ("Lyon"), and used that control to benefit itself to the detriment of other creditors by transferring the Debtor's monies to other entities and effectuating a foreclosure through which WhiteHorse acquired substantially all of the Debtor's assets, thereby impairing Respondents' ability to collect on their judgment against the Debtor.

3.      Stripped of labels, these allegations describe an injury to the Debtor and its creditors as a whole. Any resulting cause of action is of a generalized nature such that it could be brought by any of the Debtor's creditors. As such, the claims are property of the Debtor's estate and only the Trustee has standing to pursue them. Respondents' commencement and continued prosecution of the Florida Action constitutes an exercise of control over property of the estate and, accordingly, violates the automatic stay.

4.      This Trustee's motion should be granted and an order entered providing that the Florida Action violates the automatic stay.

### JURISDICTION

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

6.      This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### BACKGROUND

*Prepetition Events*

7.      According to the Florida Complaint, on or about May 16, 2022, the Debtor purchased OTF studios from Core2000 pursuant to the Asset Purchase Agreement ("APA") attached to the Florida Complaint.  (Florida Complaint ¶ 25.)

8.      Upon information and belief, the Debtor defaulted on certain of its post-closing payment obligations under the APA.

9.      Following default, the documents reflect that the loan parties under a credit agreement among WhiteHorse Capital Management LLC as administrative agent for affiliated lenders, the Debtor as borrower, its parent company HH Holdco, Inc., and its subsidiaries as guarantors, entered into an eighth amendment whereby the loan parties agreed, inter alia, to restrictions on the Debtor's ability to repay Core2000 without WhiteHorse's consent.

10.     A stipulated final judgment, attached to the Florida Complaint, was entered on or around September 29, 2023 in favor of Respondents and against the Debtor for amounts due under the APA.

11.     The Florida Complaint alleges that Respondents subsequently garnished $3.7 million of Debtor funds on deposit with Chase Bank; WhiteHorse successfully challenged the garnishment on the ground that its lien was superior to that of the judgment creditors; and WhiteHorse transferred the garnished funds back to the Debtor via its wholly-owned subsidiary Braintree Fitness, LLC ("Braintree"). (Florida Complaint ¶¶ 53-61.) Respondents allege that these events resulted from WhiteHorse's control over the Debtor.

12.     The Florida Complaint further alleges that following the garnishment, WhiteHorse directed the Debtor to stop banking in its own name and instead used accounts titled in the name of its wholly-owned subsidiaries HH Collections LLC ("HH Collections") and Braintree. (Id. ¶¶ 68, 81.) Respondents allege that WhiteHorse directed the Debtor to divert funds that should have been paid to Respondents and instead use those funds to build additional studios, thereby increasing the value of WhiteHorse's collateral. (Id. ¶¶ 43, 81.)

3

13.     On April 22, 2024, following an interest payment default, WhiteHorse declared a default and exercised purported rights under its loan to vote the pledged equity of the Debtor's sole member HH Holdco, Inc., remove HH Holdco, Inc. as the Debtor's manager and appoint Lyon as the Debtor's manager in its stead.

14.     The Debtor entered into a Partial Strict Foreclosure Agreement dated September 25, 2024 ("PSFA") with WhiteHorse and two transferees of the Debtor's indebtedness to it, Camarillo Fitness Holdings LLC and Camarillo Fitness OpCo, LLC (together, "Camarillo"), pursuant to which the assets and equity interests in 137 of the Debtor's subsidiaries, including 109 that had operated OTF studios, were transferred to the Camarillo entities.  Lyon executed the PSFA on behalf of the Debtor.  On November 8, 2024, WhiteHorse purported to have exercised an option under that PSFA to acquire equity interests of an additional 12 subsidiaries that operated OTF studios.

*Involuntary Petition and Order for Relief*

15.     On November 20, 2024, Core2000 and two other creditors of the Debtor filed an involuntary petition against the Debtor in this case.

16.     An order for relief was entered on March 3, 2025, and the Trustee was appointed the following day.

*The Florida Action*

17.     On June 20, 2025, Respondents commenced the Florida Action.  The operative complaint is the second amended complaint, filed May 20, 2026, which asserts the following seven claims:

a. Count I: a tortious interference with contract claim against WhiteHorse, affiliated lenders, Lyon and the Camarillo entities, for interfering with the APA by using the Braintree and HH Collection bank accounts to avoid judgment enforcement, and by consummating the foreclosure of the Debtor's assets.

4

b. <u>Count II</u>: a tortious interference with business relationship against the same persons based on similar conduct.

c. <u>Count III</u>: a fiduciary duty claim against Lyon for breaching "his fiduciary duties to all creditors by advancing solely the interest of WhiteHorse, to Honors and Plaintiffs' detriment" and for "failing to act in the best interests of Honors Holdings, by authorizing the [foreclosure]" (Florida Complaint ¶¶ 154, 158).

d. <u>Count IV</u>: a fiduciary duty claim against WhiteHorse for breaching its fiduciary duty on account of its "control over the actions and decisions of its agent, Lyon" (<u>Id</u>. ¶169).

e. <u>Count V</u>: a fraudulent transfer claim against Braintree on account of its receipt of garnished funds.

f. <u>Count VI</u>: a fraudulent transfer claim against HH Collections based on its receipt of funds from Debtor subsidiaries that belonged to the Debtor and which the Debtor controlled.

g. <u>Count VIII</u>:[1] an unjust enrichment claim against WhiteHorse, affiliated lenders and the Camarillo entities, based on their retention of the benefit of the four studios sold to the Debtor under the APA despite the full purchase price not having been paid.

18.     On May 29, 2026, Lyon's counsel in the Florida Action copied the Trustee on correspondence to Respondent's counsel and suggested the Trustee attend court-ordered mediation in the Florida Action given that Respondents were pursuing claims belonging to the Debtor's estate.

19.     The Trustee immediately responded to Lyon's counsel's letter on June 1, 2026, notifying all counsel in the Florida Action that, <u>inter alia</u>, the Trustee did not consent to the prosecution of causes of action belonging to the Chapter 7 estate whether in the Florida Action or otherwise, and that the continued prosecution of such claims without Bankruptcy Court approval was a violation of the automatic stay.

20.      Despite the Trustee's letter (and despite the automatic stay), Respondents continue to prosecute the Florida Action.

---

[1] No Count VII is included in the Florida Complaint.

5

21.    On June 26, 2026, Lyon's counsel in the Florida Action informed the Trustee that Respondents had moved to compel production of documents that potentially contained the Debtor's privileged information and requested that the Trustee take a position on the issue.

22.    On June 29, 2026, the Trustee learned that WhiteHorse had filed a motion to stay the Florida Action following the Florida court's partial denial of the Florida defendants' motion to dismiss.  On July 1, 2026, the Trustee learned that the Florida court had denied the stay motion.[2]

## RELIEF REQUESTED AND BASIS THEREFOR

23.    By this motion, the Trustee seeks entry of an order providing that the automatic stay applies to the Florida Action.

24.    The claims asserted in the Florida Action belong to the Debtor's estate because they are based on an injury to the Debtor and its creditor body such that the claims could have been brought by any of the Debtor's creditors.

25.    Under 11 U.S.C. § 541(a)(1), property of the bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  "§ 541(a)(1) scope is broad," *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983), and includes "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative." *In re Brizinova*, 592 B.R. 442, 459 (Bankr. E.D.N.Y. 2018) (quoting *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)).   Causes of action constitute estate property.  *See Whiting Pools, Inc.*, 462 U.S. at 205.

---

[2] The Trustee does not have the transcript of the hearing in the Florida Action in which the Florida court denied WhiteHorse's motion.  The Trustee's Special Litigation Counsel is informed that the Florida court suggested that the parties go to the Bankruptcy Court if they believe the automatic stay applies.

26.     A claim belongs to the Debtor's estate if it "is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor", *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701 (2d Cir. 1989), or if it is "based on rights 'derivative' of, or 'derived' from, the debtor's," *In re Bernard L. Madoff Inv. Sec. LLC,* 740 F.3d 81, 88 (2d Cir. 2014).   "Whereas a derivative injury is based upon a secondary effect from harm done to [the debtor], an injury is said to be particularized when it can be directly traced to [the third party's] conduct … Non-derivative claims are personal to the individual creditor and of no interest to the others." *In re Tronox Inc.,* 855 F.3d 84, 100 (2d Cir. 2017) (quoting *Madoff*, 740 F.3d at 89) (alterations in original; internal quotations omitted).

27.     Accordingly, if a cause of action belongs to the estate, the trustee has exclusive standing to assert it. *Madoff*, 740 F.3d at 94.  As the United States Court of Appeals for the Second Circuit has explained, this rule reflects "Congress's intent … 'to protect all creditors by making the trustee the proper person to assert claims against the debtor'… 'This reasoning extends to common claims against the debtor's alter ego or others who have misused the debtor's property in some fashion.'" *Tronox,* 855 F.3d at 99 (quoting *St. Paul Fire*, 884 F.2d at 701).

28.     Under 11 U.S.C. § 362(a)(3), the filing of a bankruptcy petition operates as an automatic stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  A creditor that pursues claims belonging to the Debtor's estate violates the automatic stay.  *See Tronox*, 855 F.3d at 99; *St. Paul Fire*, 884 F.2d at 701.  It is regrettable that the Trustee has had to bring this motion given that the automatic stay is self-executing.

7

A. The Fraudulent Transfer Claims Are Property of the Estate.

29. The Florida Complaint asserts fraudulent transfer claims against Braintree to recover the garnishment funds transferred in December 2023, and against HH Collections to recover monies the Debtor transferred to HH Collections between December 2023 and September 2024.

30. Fraudulent transfer claims seeking to recover the Debtor's property are estate claims. As the United States Court of Appeals for the Second Circuit put it, "Fraudulent [t]ransfer [claims] are easy: they are the paradigmatic example of claims general to all creditors . . . and therefore were property of the estate." *In re Nordlicht*, 115 F.4th 90, 106 (2d Cir. 2024) (alterations in original; quotations omitted). *See also Madoff*, 740 F.3d at 91. As such, the Trustee has exclusive authority to assert such claims. *Id.* at 94.

B. The Breach of Fiduciary Duty Claims Are Property of the Estate.

31. The breach of fiduciary duty claim against Lyon asserts "Lyon had fiduciary duties to Honors Holding … [and] to all creditors," and he "breached his fiduciary duties to all creditors by advancing soley [*sic*] the interests of WhiteHorse, to Honors and Plaintiffs' detriment" and "by failing to act in the best interest of Honors Holdings, by authorizing the [foreclosure]." (Florida Complaint ¶¶ 151-158.) The breach of fiduciary duty claim against WhiteHorse alleges "WhiteHorse exercised complete control over Lyon's conduct as the Independent Manager of Honors Holdings and acted through its agent Lyon to violate the fiduciary duties owed to Honors and creditors" by improperly consummating the foreclosure transaction and preventing the Debtor from paying other creditors. (Id. ¶¶ 170-173.)

32. Such claims generally belong to the estate. *See Seinfeld v. Allen*, 169 F. App'x 47, 49 (2d Cir. 2006) (quoting *Pepper v. Litton*, 308 U.S. 295, 306–07 (1939)) ("[W]hile normally the

fiduciary obligation of officers, directors, and shareholders 'is enforceable directly by the corporation or through a stockholder's derivative action, it is, in the event of bankruptcy of the corporation, enforceable by the trustee'").  Indeed, Respondents themselves characterize the underlying fiduciary duties as running to the Debtor and all creditors, based on the Debtor's injury. Such causes of action amount to a generalized claim that any creditor could bring and which therefore belong to the Debtor's estate.  *Tronox,* 855 F.3d at 99–100.

33.    Respondents have argued in their Florida stay motion briefing that the fiduciary duty claims are direct claims because an insolvent company owes a direct fiduciary duty to its creditors under Georgia law.  Whether that is true or not, these claims are based on harm to the Debtor and therefore belong exclusively to the Debtor's estate <u>once a bankruptcy petition is filed</u>. *Id.; see also In re Beaulieu Grp., LLC,*  2021 WL 4469928, at \*13 (Bankr. N.D. Ga. 2021) (breach of fiduciary duty claim based on duties owed directly to creditors was within trustee's authority to pursue). Respondents' standing to bring such claims <u>prepetition</u> is not relevant to the issue of whether such claims belong to the Debtor's estate postpetition; to be sure, there are many claims which a creditor has standing to bring prepetition but is stripped of standing once a petition is filed such as fraudulent transfer claims. Moreover, Respondents themselves admit that the asserted fiduciary duties run to all creditors.  Therefore, this is plainly not a claim "personal to the individual creditor and of no interest to the others." *Tronox,* 855 F.3d at 84.

C. <u>The Remaining Claims Are Based on the Generalized Injury and Are Therefore Property of the Estate</u>.

34.    The remaining claims for tortious interference and unjust enrichment are property of the estate because they are premised on the injury to the Debtor and its creditors.

35.    It is immaterial that Respondents attempt to style these causes of action as direct claims. The Court must look beyond the labels and examine the substance of the alleged injury.

As the United States Court of Appeals for the Second Circuit has cautioned, courts should be "wary of putting form over substance" because state court plaintiffs "often try, but are not permitted, to plead around a bankruptcy" by characterizing derivative claims as particularized ones. *Tronox*, 855 F.3d at 99–100. Thus, "creditors may not avoid standing requirements through artful repleading" of estate claims by merely assigning them different causes of action. *Ritchie Cap. Mgmt., L.L.C. v. Gen. Elec. Cap. Corp.*, 121 F. Supp. 3d 321, 336–37 (S.D.N.Y. 2015), *aff'd*, 821 F.3d 349 (2d Cir. 2016).

36.    That is precisely what Respondents attempt here. Respondents' tortious interference claims are based on WhiteHorse's alleged control of the Debtor and Lyon and the foreclosure of the Debtor's assets. In substance, those allegations challenge conduct that allegedly injured the Debtor and diminished the value of the bankruptcy estate, making them indistinguishable from the fiduciary duty claims that indisputably belong to the Trustee.

37.    The unjust enrichment claim fares no better. It also rests on generalized harm to creditors because had the studios Defendants sold to the Debtor not been foreclosed upon, they would be available to generate revenue for the benefit of all creditors.  Any enrichment therefore came at the expense of the Debtor's estate and other creditors, not Respondents individually.

38.    Because these claims seek to redress injuries common to the Debtor and its creditors as a whole, Respondents cannot defeat the Trustee's exclusive standing by recasting estate claims under different legal theories. To hold otherwise would open the floodgates to duplicative litigation, a race among creditors to recover estate assets and insurance proceeds, and the depletion of assets that Congress entrusted the Trustee to marshal and distribute for the benefit of all creditors.

## **CONCLUSION**

39.     The Trustee seeks an order providing that the automatic stay applies to the Florida Action. The Trustee is not seeking damages, sanctions, subordination or other similar remedies at this time for violation of the automatic stay, but expressly reserves the right to do so in the future.

## **NOTICE**

40.     This motion is being made on notice to (a) Robert Scot James, (b) Core2000, LLC, (c) the Office of the United States Trustee, (d) parties to the Florida Action, (e) all creditors that filed proof of claims in the Chapter 7 case, and (f) all persons that have entered an appearance in this case.

## **NO PRIOR REQUEST**

41.     No prior request for the relief sought in this motion has been made to this Court.

WHEREFORE, the Trustee respectfully requests that the Court grant this motion, enter an order providing that the automatic stay applies to the Florida Action, and for such other and further relief as the Court deems just and proper.

Dated: New York, NY                       Amini LLC
       July 9, 2026

                                        */s/ Yosef Trachtenberg*
                                        Avery Samet, Esq.
                                        Jeffrey Chubak, Esq.
                                        Yosef Trachtenberg, Esq.
                                        131 West 35th Street
                                        12th Floor
                                        New York, NY 10001
                                        (212) 490-4700
                                        asamet@aminillc.com
                                        jchubak@aminillc.com
                                        ytrachtenberg@aminillc.com
                                        Special Litigation Counsel for Lori Lapin Jones, Esq., Chapter 7 Trustee

11