M. Ryan Pinkston (*pro hac vice*)
SEYFARTH SHAW LLP
560 Mission Street, Suite 3100
San Francisco, CA 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549
Email: rpinkston@seyfarth.com

*Attorneys for Core2000 LLC and Robert Scot James*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>HONORS HOLDINGS, LLC,<br><br>                              Debtor. | Chapter 7<br><br>Case No. 24-44875 (ESS) |

**CORE2000 LLC AND ROBERT SCOT JAMES'S OPPOSITION**
**TO TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY**

Core2000 LLC ("Core2000") and Robert Scot James ("James") (together, "Respondents") hereby oppose the Motion to Enforce Automatic Stay (Dkt. No. 106) (the "Motion") filed by Chapter 7 Trustee Lori Lapin Jones, Esq. (the "Trustee") for the bankruptcy estate (the "Estate") of Debtor Honors Holdings, LLC ("Honors") and state as follows:

**INTRODUCTION**

1.      Respondents are plaintiffs in an action commenced against <u>*non-debtor*</u> defendants in Florida state court. *See Robert Scot James, et al., v. WhiteHorse Capital Management LLC, et al.*, Case No. 2025-011769-CA-01 (Cir. Ct. of 11th Jud. Cir. for Miami-Dade County) (the "Florida Action"). A copy of Respondents' operative Second Amended Complaint (the "Complaint") in the Florida Action is attached hereto as **Exhibit 1**.[1]

---

[1] The Trustee's Motion states that a copy of the Complaint is attached to Motion, but the exhibit is missing.

327657640v.2

2.      As set forth in detail in the Complaint, Respondents hold a valid and final judgment against Honors in the amount of $5,947,533, plus prejudgment interest, $85,000 in attorneys' fees, and continuing post-judgment interest (the "Judgment").  The Complaint, however, does *not* seek to enforce the Judgment, to advance any claim or cause of action against Honors, or to obtain any recovery from Honors, as Respondents have filed a proof of claim in this bankruptcy case for those purposes.  (*See* Claim No. 10-1.)

3.      Rather, the Complaint and its allegations arise from tortious and other misconduct committed against and directed specifically toward *Respondents* (not Honors' creditors writ large) by, among others, WhiteHorse Capital Management LLC and certain of WhiteHorse's affiliates (collectively, "WhiteHorse"), Webster Bank, N.A. ("Webster"), and Grant Lyon ("Lyon"), a controlled director installed by WhiteHorse to exercise control over Honors.  To be specific, Respondents allege in their well-pled Complaint that they are entitled to relief against the foregoing non-debtor defendants for: (1) certain defendants' tortious interference with Respondents' contractual relationship with Honors; (2) certain defendants' tortious interference with Respondents' business relationships; (3) breaches of fiduciary duties owed directly to Respondents (not those owed to creditors generally or those owed to Honors); and (4) an avoidable fraudulent transfer of $3.7 million orchestrated by WhiteHorse in direct response to, and to thwart, *Respondents'* prepetition garnishment efforts.

4.      The Trustee now moves, purportedly pursuant to 11 U.S.C. § 362(a)(3), to enforce the automatic stay and halt Respondents' prosecution of claims that belong to Respondents in the Florida Action.  As this Court knows well, Section 362(a)(3) "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or

327657640v.2

to exercise control over property of the estate." The fatal defect with the Trustee's Motion, as detailed herein, is that none of Respondents' claims constitute "property of the estate."

5. As the Second Circuit explained in *FDIC v. Hirsch (In re Colonial Realty Company)*, a claim against a non-debtor third party to avoid and recover a fraudulent transfer is not, itself, property of the bankruptcy estate, nor is the property potentially subject to recovery (at least until the trustee recovers it). 980 F.2d 125, 131 (2d Cir. 1992) (following *In re Saunders*, 101 Bankr. 303, 304-06 (Bankr. N.D. Fla. 1989)); *Klingman v. Levinson*, 158 B.R. 109, 113 (N.D. Ill. 1993). As explained below, nothing in the Bankruptcy Code strips Respondents of their ownership of fraudulent transfer claims.[2] Nonetheless, in deference to the Trustee's temporary exclusive statutory standing to bring such claims, *see, e.g.*, *Klingman*, 158 B.R. at 113; *Barber v. Westbay (In re Integrated Agri, Inc.)*, 313 B.R. 419, 427-28 (Bankr. C.D. Ill. 2004), Respondents agreed prior to the Motion to stay the prosecution of their fraudulent transfer claims in the Florida Action for the time being.

6. However, Respondents' remaining claims all constitute direct actions that Respondents own and have the right to prosecute. It is settled that "[a] debtor's bankruptcy trustee . . . is not authorized to pursue every action that creditors of the debtor might pursue." *General Elec. Capital Auto Lease v. Broach (In re Lucas Dallas, Inc.)*, 185 B.R. 801, 805 (B.A.P. 9th Cir. 1995) (quoting *Wyle v. Howard, Weil, Labouisse, Friedrichs Inc. (In re Hamilton Taft & Co.)*, 176 Bankr. 895, 902 (Bankr. N.D. Cal. 1995)); *see also Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 434 (1972) (trustee lacks standing to prosecute claims that belong to third parties); *Mixon v. Anderson (In re Ozark Restaurant Equip. Co.)*, 816 F.2d 1222, 1227-28 & nn. 9-10 (8th Cir.

---

[2] That said, Respondents understand and acknowledge that a claim to avoid a fraudulent transfer may constitute an action "to recover a claim against the debtor" that is stayed pursuant to 11 U.S.C. § 362(a)(1). *See Colonial Realty*, 980 F.2d at 131-32 (fraudulent transfer claim against non-debtor third party stayed as seeking "to recover a claim against the debtor" given that right to bring such claim derives from separate claim against debtor).

327657640v.2

1987) (before adoption of statute, Congress deleted provision that would allow trustee to assert causes of action belonging to and on behalf of all creditors).

7. Indeed, although the Trustee attempts to categorize Respondents' claims as reflecting generalized injuries to all creditors, the Trustee cannot explain away that Respondents' tortious interference claims relate specifically to contractual and other rights *held exclusively by Respondents*. First, it is plain and obvious that no other creditor could have a right of action for WhiteHorse's tortious interference *with contractual rights held by Respondents* or *with Respondents' prospective business relationships*. The same is true with respect to breaches of fiduciary duties that, under Georgia law, were owed *directly to Respondents*. *See, e.g.*, *Reeser v. Glover*, 374 Ga. App. 490, 495 (Ct. App. 2025) ("Unlike Delaware, however, Georgia law does recognize that members of an insolvent company owe a *direct* fiduciary duty to its creditors, and further that a breach of that duty will give rise to a cause of action.") (emphasis added). None of the Trustee's cited authorities alter these incontrovertible conclusions here.

8. Accordingly, as explained herein, the Trustee's Motion should be denied, and Respondents are entitled to continue to prosecute their claims (other than the temporarily stayed fraudulent transfer claims) in the Florida Action against the various non-debtor defendants.

**RELEVANT BACKGROUND**

9. Much of the following factual background is taken from the Complaint, the contents of which are incorporated herein by reference.

10. Together, Respondents owned and operated various Orangetheory Fitness franchise studios and related assets. (*See* Compl., at ¶ 23.) On or about May 16, 2022, pursuant to an asset purchase agreement, Core2000 sold four such studios to Honors, the "Area Developer" rights to the State of Tennessee, and certain related assets. (*See id.* at ¶ 25.) Critically, WhiteHorse, Honors' lender, knew that Honors could not meet its credit obligations, but nonetheless approved Honors'

4

purchase of studios and related assets from Respondents with the intention that Honors would default on its obligations to Respondents, thereby paving a path by which WhiteHorse could acquire Respondents' high-performing studios without paying for them. (*See id.* at ¶¶ 38-39.)

11.  Predictably (at least to Honors and WhiteHorse), Honors breached its asset purchase agreement with Respondents, including by failing to pay two deferred payments totaling $5,500,000. (*See id.* at ¶ 26.)

12.  To enforce and protect their rights, Respondents commenced suit against Honors in federal court in Delaware. (*See id.* at ¶ 32.) Thereafter, in direct response to Respondents' commencement of suit, WhiteHorse, Honors' lender, directed Honors not to pay Respondents or otherwise satisfy the Judgment. (*See id.* at ¶ 34.) Specifically, WhiteHorse coerced Honors into executing that certain Eighth Amendment to Credit Agreement expressly prohibiting Honors from paying Respondents as specifically identified in such amendment. (*See id.* at ¶¶ 35, 44-52.) WhiteHorse directed these actions with specific reference to Respondents in order to prejudice and harm Respondents. (*See id.*)

13.  Respondents' suit in Delaware culminated in entry of the Judgment in favor of Respondents. (*See id.* at ¶ 33.) Respondents domesticated such Judgment in Georgia, Honors' state of organization, and proceeded to attempt to garnish approximately $3.7 million from Honors. (*See id.* at ¶ 53.) WhiteHorse intervened in the garnishment proceedings, took the funds subject to garnishment, and then immediately hid the funds in an Honors subsidiary, Braintree Fitness LLC, in order to pay certain of Honors' preferred creditors and to refuse to pay Respondents, all atWhiteHorse's express direction. (*See id.* at ¶¶ 57-70.)

14.  Respondents continued in their efforts to overcome WhiteHorse's deliberate interference with Respondents' rights by registering the Judgment in the Southern District of

327657640v.2

Florida and the Northern District of Georgia, whereby Respondents further confirmed WhiteHorse's exercise of control over Honors with actions directed intentionally to harm Respondents. (*See id.* at ¶¶ 75-79.) In particular, Respondents learned that not only had WhiteHorse directed Honors to dishonor its contractual obligations to Respondents, but also that WhiteHorse simultaneously permitted Honors to establish a new subsidiary in which to hide funds in order to pay creditors other than Respondents to further enrich WhiteHorse. (*See id.* at ¶¶ 80-91.)

15. In April 2024, at a time when Honors had defaulted on its obligations to WhiteHorse, was insolvent, and had been used by WhiteHorse to funnel money specifically beyond the reach of Respondents and the enforcement of their Judgment, WhiteHorse appointed a purportedly "independent" manager of its own selection to do its bidding at Honors. (*See id.* at ¶¶ 92, 94.) This "independent" manager, Lyon, helped WhiteHorse orchestrate Honors' final demise, thereby breaching the fiduciary duties that Lyon, as the manager of an insolvent entity, and WhiteHorse, on account of its dominion and control over Lyon and such insolvent entity, owed directly to Respondents in accordance with Georgia law. (*See id.* at ¶¶ 93-116 .)[3]

16. Notably, Respondents, through counsel, have been in steady communication with the Trustee and her special counsel since the Trustee's appointment and her retention of such counsel. Respondents have never attempted to assert claims that belong to the bankruptcy estate, nor have they asserted that the Trustee has consented to the prosecution of claims that belong to the bankruptcy estate by anyone other than the Trustee and counsel of her choosing.

---

[3] Lyon and WhiteHorse very well may have breached fiduciary duties that he owed to Honors and perhaps to other creditors, but those duties and such breaches are not part of the Complaint or the Florida Action, and Respondents do not seek damages relating to any harm to other creditors. Reference in the Complaint to duties owed to "all creditors" or other creditors is merely a recitation of background and circumstance, and Respondents disclaim any ability to recover on behalf of anyone other than themselves or on account of any duties owed to anyone else.

6

17.     To the contrary, the Complaint sets forth claims that belong to Respondents and to Respondents alone.  Respondents' counsel communicated this view to the Trustee, through her counsel, prior to the filing of the Motion.  As is apparent from the Motion, the parties disagree as to the scope of estate property and the application of the automatic stay in bankruptcy, but as explained below, the claims that Respondents possess and would like to prosecute to completion in the Florida Action indisputably are not "property of the estate."

**LEGAL STANDARD**

18.     The Trustee, as movant here, bears the burden of proof to establish that the automatic stay applies because "property of the estate" is at issue.  *See, e.g.*, *TMT Procurement Corp. v. Vantage Drilling Co. (In re TMT Procurement Corp.)*, 764 F.3d 512, 523 (5th Cir. (2014) ("The party seeking to include property in the estate bears the burden of showing that the item is property of the estate."); *Mackenzie v. Neidorf (In re Neidorf)*, 534 B.R. 369, 372 (B.A.P. 9th Cir. 2015) (same).

19.     Importantly, "[a] debtor's bankruptcy trustee . . . is not authorized to pursue every action that creditors of the debtor might pursue."  *General Elec. Capital Auto Lease v. Broach (In re Lucas Dallas, Inc.)*, 185 B.R. 801, 805 (B.A.P. 9th Cir. 1995) (quoting *Wyle v. Howard, Weil, Labouisse, Friedrichs Inc. (In re Hamilton Taft & Co.)*, 176 Bankr. 895, 902 (Bankr. N.D. Cal. 1995)).  "Where . . . 'the applicable state law makes such obligations or liabilities run to the corporate creditors personally, rather than to the corporation, such rights of action are not assets of the estate under Section 541(a) that are enforceable by the trustee."  *Mixon*, 816 F.2d at 1225 (citations omitted).

327657640v.2

**ARGUMENT**

## I. Respondents' Tortious Interference Claims Indisputably Belong To Respondents, Not The Estate.

20. Try as she might, the Trustee fails to carry her burden to establish that Respondents' claims for tortious interference constitute "property of the estate."

21. Respondents' claims for tortious interference have, as their necessary predicate, a specific contractual right held by Respondents or a specific business relationship to which Respondents were a party. (*See* Compl., at ¶¶ 120-21 (valid, enforceable contract with which WhiteHorse and Lyon interfered), ¶¶ 136-37 ("Plaintiffs' business relationships" disrupted by wrongful means).) Indeed, the existence of such a contractual right or relationship on the part of Respondents is a necessary element of each tortious interference claim. *See, e.g.*, *McKinney-Green, Inc. v. Davis*, 606 So. 2d 393, 397 (Fla. App. Ct. 1992) (essential element of claim for tortious interference with contract is existence of a contract); *Imperial Majesty Cruise Line, LLC v. Weitnauer Duty Free, Inc.*, 987 So. 2d 706, 707 (Fla. App. Ct. 2008) (essential element of claim for tortious interference with business relationship is existence of business relationship). The Trustee merely proclaims, without citation to on-point authorities, that these claims are general in nature, but not so. The claims necessarily turn on whether specific conduct by WhiteHorse and Lyon, directed specifically at Respondents, interfered with Respondents' unilaterally held rights. No other creditor holds the same contractual right or is a party to the same business relationship that would give rise to the same tortious interference claims.

22. The Trustee posits that Respondents' tortious interference claims arise from "WhiteHorse's alleged control of the Debtor and Lyon and the foreclosure of the Debtor's assets." (Motion, at ¶ 36.) In essence, the Trustee contends that because the conduct at issue may also have harmed Honors or that some factual overlap exists with other claims that others may hold,

Respondents' claims are property of the estate that only the Trustee may prosecute.  But, the Trustee's contention is incorrect.  Any overlap in factual predicates for one claim or another does not bear any meaningful connection to whether a particular creditor's injury, such as either of Respondents, is particularized or general, and in any event, the Complaint and Respondents' demands in the Florida Action are limited to specific harms suffered directly by Respondents, not harms to creditors in general.  *Cf. Tronox*, 855 F.3d at 101 (discussing "*Manville III*" and finding claims non-derivative because "they sought to recover for harms done directly to plaintiffs").

23.     Neither of Respondents' tortious interference claims in the Florida Action "is a general one, with no particularized injury arising from it," nor could any such claims "be brought by any creditor of the debtor." *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 701 (2d Cir. 1989).  Nor are such claims derivative of the rights of Honors.  *See In re Tronox Inc.*, 855 F.3d 84, 100 (2d Cir. 2017) (quotations omitted).  Because only Respondents had the prerequisite contractual rights and business relationships with which WhiteHorse and others interfered, only Respondents own and may prosecute such claims.  *See Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1093 (2d Cir. 1995) ("[W]hen creditors . . . have a claim for injury that is particularized as to them, they are exclusively entitled to pursue that claim, and the bankruptcy trustee is precluded from doing so.").

## II.    Respondents' Breach Of Fiduciary Duty Claims, Governed By Georgia Law, Are Direct Claims That Belong To Respondents Alone.

24.     The Trustee argues that because Lyon and WhiteHorse may have owed fiduciary duties to entities or individuals other than Respondents, Respondents' breach of fiduciary duty claims belong to the bankruptcy estate and may only be prosecuted by the Trustee.  Significantly, however, the Trustee does not cite any authority that actually supports her proposition.

327657640v.2

25.     Respondents bring their breach of fiduciary duty claims in the Florida Action under Georgia law, the law governing in the state in which Honors was organized and in which Lyon and WhiteHorse purportedly managed Honors.  Admittedly, many are familiar with the concept that fiduciary duty claims belong to the corporate entity to which such fiduciary duties are owed, such that only the corporate entity may bring direct claims for breaches of such duties unless standards are met in order to bring such claims through a derivative action.  In fact, that law is well settled in Delaware decisions regarding corporate governance.  *See, e.g.*, *N. Am. Catholic Educ. Programming Found. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007) (declining to recognize directors of insolvent corporation owe direct fiduciary duties to creditors and, instead, requiring derivative suit).  The Trustee cites authorities that are in accord with this general proposition.  *See Seinfeld v. Allen*, 169 Fed. App'x 47, 49 (2d Cir. 2006) (directors' and officers' fiduciary obligations enforceable directly by corporation, derivatively by shareholder, or by trustee in the event of bankruptcy).

26.     But, the Trustee's position is inapposite because Respondents' claims under Georgia law constitute direct rights of action held specifically by Respondents on account of breaches of duties owed directly to Respondents.  In *Reeser*, the Georgia appellate court explained that Georgia law differs from Delaware law on the precise question at issue here.  *See* 374 Ga. App. at 495 ("Unlike Delaware, however, Georgia law does recognize that members of an insolvent company owe a direct fiduciary duty to its creditors, and further that a breach of that duty will give rise to a cause of action.") (collecting Georgia authorities and refusing to follow *Gheewalla*).

27.     In *Tronox*, the Second Circuit expressly noted that "[n]on-derivative [(*i.e.*, direct)] claims are personal to the individual creditor and of no interest to the others."  855 F.3d at 100.  The *Tronox* court endorsed the conclusion in *Picard v. JPMorgan Chase Bank & Co. (In re Bernard L.*

327657640v.2

*Madoff Inv. Sec. LLC)*, 721 F.3d 54, 71 (2d Cir. 2013), that the claims "of thousands of customers against third-party financial institutions for their handling on individual investments . . . were owned by the customers, and were therefore not derivative" because the claims resulted from specific acts against specific customers that caused specific harm. 855 F.3d at 101. The exact same is true with respect to Respondents' claims in the Complaint in the Florida Action.

28. The Trustee cites *In re Beaulieu Group, LLC*, No. 18-4027, 2021 Bankr. LEXIS 2662, at *78-79 (Bankr. N.D. Ga. Sept. 29, 2021), for the proposition that a bankruptcy trustee has authority to pursue breach of fiduciary duty claims based on duties owed directly to creditors. (*See* Motion, at ¶ 33.) The issue in *Beaulieu*, however, was not whether a creditor may bring a direct action against a non-debtor third party for breaching fiduciary duties owed directly to such creditor. Rather, the court observed that, for purposes of a motion to dismiss, sufficient allegations had been pled as to both a claim of breach of a duty *to the debtor* and a breach of a duty *to creditors*, with an issue remaining as to timing as to when the debtor became insolvent. *Beaulieu*, 2021 Bankr. LEXIS 2662, at *78-79. Two points are critical about that decision. First, the court was distinguishing a decision under Delaware law in which a trustee attempted to bring duplicative claims: a direct claim on behalf of the debtor, and a derivative claim as a representative of all creditors. That issue is not present here. Second, the decision does not address the specific circumstances here, where a specific creditor has alleged a specific breach of fiduciary duties owed directly to such creditor. In that case, the claims alleged an injury to "the debtor's ability to make money," *id.*, not particular financial harm to a specific creditor.

29. The fact that the Complaint points out that Lyon and WhiteHorse may have owed fiduciary duties to "all creditors" is simply not the same as Respondents seeking relief for specific harms that they suffered at the hands of Lyon and WhiteHorse. Indeed, the Complaint sets forth

specific acts directed only at Respondents and intended to harm Respondents, which is a far different scenario than the generic depletion of a company's assets to be borne by all creditors. Because the injuries alleged and the recovery sought are particular to Respondents and the financial harm they have suffered, the Complaint is more in line with the discussion in *Tronox* regarding *Manville III* and *JPMorgan* and the existence of specific injuries suffered by a specific creditor individually. *See* 855 F.3d at 100-01. The Motion must be denied as to Respondents' fiduciary duty claims.

**III. The Trustee Is Incorrect That Respondents' Fraudulent Transfer Claims Constitute "Property Of The Estate," But Respondents Have Already Agreed To Stay Such Claim For The Time Being In Light Of The Trustee's Temporary Standing.**

30. As noted above, nothing in the Bankruptcy Code strips Respondents of their ownership of their state-law fraudulent transfer claims. *See, e.g.*, *Nat'l Am. Ins. Co. Hatchett v. U.S.*, 330 F.3d 875, 886 (6th Cir. 2003) ("[T]he Bankruptcy Code does not extinguish the right of [a creditor] to bring a state law action for fraudulent conveyance."). This distinction is important because the Court should take care not to suggest that the Trustee owns Respondents' fraudulent transfer claims or that anything that occurs here alters or impairs such claims. Instead, courts merely recognize that *for a limited time*, the Trustee has exclusive statutory standing to prosecute fraudulent transfer claims. *See, e.g.*, *Tronox*, 855 F.3d at 106 (trustee may bring generalized, derivative claims that belong to estate); *Barber v. Westbay (In re Integrated Agri, Inc.)*, 313 B.R. 419, 427-28 (Bankr. C.D. Ill. 2004) (creditor retains standing to pursue state-law fraudulent transfer action in own name and for own benefit once trustee's statute of limitations expires).

31. Prior to the Trustee's Motion, Respondents already agreed to stay the prosecution of their fraudulent transfer claims in the Florida Action, at least until the Trustee's standing expires. Respondents' voluntary agreement to stay such claims necessarily means that the Trustee's Motion, as it pertains to the fraudulent transfer claims, was both unnecessary in the first instance and is moot

12

in any event.  For that reason, the Trustee's Motion should be denied, at least without prejudice, with respect to Respondents' fraudulent transfer claims.

**CONCLUSION**

32.	Because the Trustee's Motion fails to carry the Trustee's burden to establish that Respondents' claims are "property of the estate," and in light of Respondents' agreement to stay their fraudulent transfer claims pending the expiration of the Trustee's standing, the Motion fails and must be denied.  The Court should enter an Order making clear that Respondents may continue the prosecution of their claims, save their fraudulent transfer claims for the time being, unabated by the automatic stay.


Dated:	August 4, 2026	SEYFARTH SHAW LLP
	San Francisco, California	By:	/s/ *M. Ryan Pinkston*
		M. Ryan Pinkston (*pro hac vice*)
		SEYFARTH SHAW LLP
		560 Mission Street, Suite 3100
		San Francisco, CA 94105
		Telephone: (415) 397-2823
		Facsimile: (415) 397-8549
		Email: rpinkston@seyfarth.com

		*Attorneys for Core2000 LLC and Robert Scot James*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2026, a true and correct copy of the foregoing **CORE2000 LLC AND ROBERT SCOT JAMES'S OPPOSITION TO TRUSTEE'S MOTION TO ENFORCE AUTOMATIC STAY** was caused to be served via the Court's CM/ECF system on all parties registered to receive electronic notice in this case.

/s/ *M. Ryan Pinkston*
M. Ryan Pinkston

14