**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Involuntary Chapter 7 |
| Honors Holdings, LLC, | Case No.: 24-44875 (ESS) |
| Debtor. | |

**DECLARATION OF CAREY D. SCHREIBER IN SUPPORT OF MOTION OF WHITEHORSE CAPITAL MANAGEMENT, LLC AND CAMARILLO FITNESS OPCO, LLC FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 362(d) AUTHORIZING RELIEF FROM THE AUTOMATIC STAY**

I, Carey D. Schreiber, hereby declare under penalty of perjury as follows:

1. I submit this declaration ("Declaration") in support of the *Motion of WhiteHorse Capital Management, LLC and Camarillo Fitness Opco, LLC for Entry of an Order Pursuant to 11 U.S.C. §§ 105 and 362(d) Authorizing Relief from the Automatic Stay* (the "Motion")[1] filed concurrently herewith.

2. I am a partner with the law firm of Winston Taylor LLP, attorneys for WhiteHorse and Camarillo. I am over the age of 18 years and am authorized to submit this Declaration on behalf of WhiteHorse and Camarillo. Except where specifically noted, the statements in this Declaration are based on my personal knowledge, my review of the documents referenced herein and on information that I have received from WhiteHorse and Camarillo and counsel to the Chapter 7 Trustee. If I were called upon to testify, I could and would testify competently to the facts set forth herein.

[1] Capitalized terms used and not otherwise defined herein shall have the meaning given in the Motion.

3. WhiteHorse is the agent for the lenders under that certain Credit Agreement, dated as of September 6, 2019, by and among the Debtor, as borrower, HH Holdco, Inc., and the other persons from time to time party thereto as credit parties (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), pursuant to which WhiteHorse provided the Debtor with access to $100 million of funding. Pursuant to that certain Security Agreement, dated as of September 6, 2019 (as amended, restated, supplemented or otherwise modified from time to time, the "Security Agreement"), the Debtor and its subsidiary grantors granted WhiteHorse a security interest in and liens upon substantially all of their assets, including all of the membership interests owned by the Debtor in HHM, a wholly-owned non-debtor subsidiary of the Debtor (the "HHM Pledged Equity"). *See* Security Agreement § 2(a) and Schedule 5. Annexed hereto as **Exhibit A** is a true and correct copy of the Security Agreement.

4. On April 22, 2024, WhiteHorse delivered a Notice of Default and Reservation of Rights notifying the Debtor, HH Holdco, Inc. and the other credit parties that an Event of Default (as defined in the Credit Agreement) had occurred and was continuing as a result of the Debtor's failure to pay a required interest payment under the Credit Agreement (the "Existing Event of Default"). Pursuant to Section 6 of the Security Agreement, prior to the Petition Date, upon the occurrence and continuance of the Existing Event of Default, the Debtor's right to exercise the voting and other consensual rights over the HHM Pledged Equity ceased and became vested in WhiteHorse, and WhiteHorse holds an irrevocable proxy, coupled with an interest, and power of attorney to exercise all voting and other rights pertaining to the HHM Pledged Equity. *See* Security Agreement §§ 6(b)(i), 6(i), and 6(j).

5. On September 25, 2024, the Debtor and WhiteHorse entered into that certain Partial Strict Foreclosure Agreement (the "PSFA") under Section 9-620 of the New York Uniform

Commercial Code pursuant to which, among other things, assets of certain of the Debtor's subsidiaries that were not acquired, including those of HHM (the "Foreclosed Assets"), were accepted by WhiteHorse and assigned to Camarillo and its affiliate, as applicable, in exchange for the partial satisfaction of $70 million of the more than $114 million in secured obligations owing to WhiteHorse by the Debtor, leaving WhiteHorse owed in excess of $44 million by the Debtor. Annexed hereto as **Exhibit B** is a true and correct copy of the PSFA.

6. The assets of HHM were foreclosed upon and assigned to Camarillo pursuant to the PSFA and that certain Assignment Agreement, dated as of September 25, 2024 (the "Assignment"). HHM is its own taxpayer and prior to the Petition Date filed its own tax returns. The Foreclosed Assets include, among other things, "all tax refunds, refundable VAT, rebates, credits (including any employee retention tax credits), or similar benefits relating to taxes, including employee retention tax credits, and other governmental charges related to the Transferred Assets" (such credits and similar benefits, collectively, the "ERTC Credits"). *See* PSFA, Recital L, Schedule B, Annex to Schedule B ¶ 19; Assignment, Annex II ¶ 2. Accordingly, Camarillo owns all of HHM's right, title, and interest in the ERTC Credits. Annexed to the PSFA as **Exhibit A** thereto is a true and correct copy of the Assignment.

7. In addition, pursuant to Section 11(a) of the PSFA, among other things, HHM authorized WhiteHorse to open any and all mail addressed to it relating to the Foreclosed Assets. *See* PSFA § 11(a). Section 11(b) of the PSFA further provides that any checks received by an Excluded Entity (as defined in the PSFA) after the Closing Date (as defined in the PSFA) with respect to Transferred Collateral (as defined in the PSFA) "shall be held in trust by such Excluded Entity for the Agent's benefit and account." PSFA § 11(b). Accordingly, even if HHM were to

receive the Outstanding ERTC Check, it would be required to hold it in trust for WhiteHorse's benefit and account.

8. I am informed that WhiteHorse and Camarillo believe that an ERTC refund check payable to HHM (the "Outstanding ERTC Check") has been issued by the IRS but has not been received by HHM or any of its affiliates. I am informed that Camarillo has attempted to contact the IRS regarding the Outstanding ERTC Check, but the IRS will not speak with Camarillo because HHM, and not Camarillo, is the taxpayer. The IRS requires that HHM execute an IRS Form 2848, Power of Attorney and Declaration of Representative (the "IRS POA"), before it will discuss the Outstanding ERTC Check.

9. On multiple occasions, WhiteHorse sought to have the chapter 7 trustee (the "Trustee") execute the IRS POA, even offering to enter into a stipulation of the type previously executed resolving WhiteHorse's prior motion to lift the automatic stay, including a reservation of rights. *See* Docket Nos. 73 and 76. Notwithstanding WhiteHorse's responses to multiple questions from the Trustee and the Trustee's engagement of an accounting firm to, among other things, purportedly address such issue, counsel for the Trustee asserted that the Trustee "lacks authority to sign a power of attorney for a nondebtor."

10. Modifying the automatic stay to permit WhiteHorse to exercise its vested irrevocable proxy, coupled with an interest, and power of attorney over the HHM Pledged Equity to cause the IRS POA to be executed on behalf of HHM (i) will result in a complete resolution of the issue, (ii) will cause no interference with the Chapter 7 Case, (iii) will not prejudice any of the Debtor's other creditors, as the relief concerns only an asset that is not property of the Debtor's estate, and (iv) will relieve the harm currently being done to WhiteHorse and Camarillo, which,

absent such relief and with year-end approaching, risk the Outstanding ERTC Check being forever lost if it cannot be located or reissued.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed: November 13, 2026
New York, New York


Carey D. Schreiber
**WINSTON TAYLOR LLP**
200 Park Avenue
New York, New York 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
carey.schreiber@winstontaylor.com